63   625
65    26

63   625
f72  502

63   625
73   232

63   625
84   283

63   625
90   368

BEMIS *v.* FIRST NATIONAL BANK.

Opinion delivered April 3, 1897

FIXTURES—SAW MILL MACHINERY.—A deed of land on which a saw mill and a planer were situated conveyed the land "together with all the mills, machinery, tools, fixtures, appurtenances pertaining to the same," reserving a vendor's lien. The mill site had long been in use as such, and it was the custom to regard all machinery attached to the building thereon as part of the realty. The machinery was removable without injury to the land, but without it the land was of little value. *Held*, that the parties intended that the mills and machinery should be treated as fixtures, and subject to the vendor's lien.

DEED—MERGER OF RIGHTS.—A conveyance of land in fee by a vendee to his vendor holding an express vendor's lien will not be held to merge the lien in the title in fee, so as to let in the intervening rights of an attaching creditor, when such was not the intention of the parties to the deed.

Appeal from St. Francis Circuit Court in Chancery.

GRANT GREEN, JR., Judge.

*R. J. Williams,* and *McCulloch & McCulloch* for appellant.

Bemis, by paying the notes, became subrogated to whatever lien the original payee may have had on the property. 3 Pom. Eq. Jur. sec. 1419; 40 Ark. 132; 44 *id.* 504; 50 *id.* 205, and cases cited. No lien by attachment could intervene, so as to cut off appellant's lien, even if it were true that the deed was executed in payment of the debt and discharge of the lien. 39 Ark. 531; 54 *id.* 153; 55 *id.* 542. The notes were a lien on the whole property; the machinery, saw mill, etc., being fixtures. 56 Ark. 55; Ewell on Fixtures, p. 22; 1 Washb. Real Pr. pp. 20, 25; 77 N. C. 188; 96 *id.* 265; 105 *id.* 322; 15 Col. 29; 150 Mass. 519; 80 Cal. 245; 6

40

N. H. 229; 85 Tex. 136; 93 Tenn. 577; 13 S. W. Rep. 419; 148 Ill. 163. The clause in the deed of Coy to Blinn reserving a lien is sufficient to constitute an equitable mortgage, to which appellant is subrogated, on *all* the property, even if the machinery be treated as personalty. 60 Ark. 595: 52 *id.* 439; 51 *id.* 433; 33 *id.* 387; 3 Pom. Eq. Jur. sec. 123, and note. It was improper to order a sale of the property until appellant's rights had been determined. Sand. & H. Dig., secs. 372, 374.

*Norton & Prewett* for appellee.

There was no lien on the property. It was *personal* property. 56 Ark. 55. At least, by far the greater part was personal property, and the real and personal was sold for a *lump* sum. In cannot be said what part of the purchase money was for the personal and what for the real property. In such case there is no lien. 2 Jones, Liens, sec. 1072; 4 So. Rep. 417; 6 *id.* 429; 2 *id.* 648; 45 N. W. 867; 14 So. Rep. 475; 45 Ark. 136; 52 Ark. 450; 2 Jones on Liens, sec. 1070. The doctrine of merger is applicable in this case. 45 Ark. 382; 15 Am. & Eng. Enc. Law, 314; 91 N. Y. 470; 7 N. Y. Ch. Rep: (Law. Ed.) bot. p. 800. There was no equitable mortgage; but if there was, it was never recorded. 11 Ark. 112; 54 *id.* 179; 60 *id.* 595.

BUNN, C. J. This is an attachment by the appellee against one H. Blinn on a promissory note transferred to it, in the St. Francis circuit court at its October term, 1891, in which appellant, Bemis, was interpleader, claiming an interest in and lien upon the attached property. On application of interpleader, the cause was transferred to the chancery docket. Decree for plaintiff, and interpleader appealed.

The property attached, in brief, was "a lot in Madison, Arkansas, described as 'court-house square,' and certain other lots in said town, including the site of

Blinn's saw mill at Madison, it being on what is or was known as 'River Front,' a strip of land lying between the eastern boundary of the town of Madison, as platted, and St. Francis river, and the complete saw mill and planing mill outfit belonging to defendant, Blinn, on said real estate, consisting of five boilers, one engine, saw mill with saws, shafting, pulleys, fixtures, etc., and the planing mill, consisting of one engine and boiler, and planing machine and shafting, pulleys, belting, fixtures, etc." This was a portion of the same property that had been previously sold under the orders of the Pulaski chancery court by receiver L. W. Coy, in a proceeding pending therein, wherein the Merchants' National Bank was plaintiff and the Van Etten Lumber Company was defendant, to the appellant, Bemis, for $11,250, who however permitted one H. Blinn to assume and enjoy his bid. Blinn executed his two notes aggregating that amount to Coy, as receiver, the same being endorsed by Bemis, who subsequently was compelled to pay them, and therefore claimed to be subrogated to the rights of receiver Coy, and therefore that he in effect had a vendor's lien on the property.

Whether or not the property (that is to say, that portion other than the lands themselves) was real estate or personal property became an important question, because the part that was undoubtedly and unquestionably real estate was of little value comparatively; and because, if the valuable part was real estate, there was a vendor's lien, and, if personal property, there was no vendor's lien, strictly speaking.

This suit was instituted on the 27th December, 1890, and the order of attachment was delivered to the sheriff the same day, and became a lien on all the property of the defendant in the county subject to execution, as provided by statute. On the 16th January, 1891,

Blinn, for the nominal consideration of one dollar, conveyed the same property to Bemis by deed which on its face is an absolute deed in fee, but which they claim was to operate as a mortgage to secure an additional indebtedness from Blinn to Bemis of about $8,000.

At the April term of the court, Bemis filed his interplea, claiming an interest in the property, and the cause was determined in the lower court as stated, and from the decree therein rendered this appeal was taken.

The first question that is presented by the record is whether or not the mill and planer and machinery attached thereto were real estate or personal property; all being attached to the buildings on the ground in the usual way.

What are fixtures.

At common law, real estate or property comprehended every thing included in the terms "lands," "tenements," and "hereditaments"; that is, the surface of the earth, and everything attached thereto. The difficulty, in any case, is in determining whether a piece of property, where movable and yet attached, is the one or the other species of property; and the general rule has never been changed, but more particularly explained in modern times. Thus, while a building and things fastened for use in it are *prima facie* real estate, because they answer the general definition of the common law, yet many circumstances are liable to intervene by which the classification of these articles coming under the head of "fixtures" may become personal property.

In *Choate* v. *Kimball*, 56 Ark. 55, this court applied the following rules taken from the authorities, and generally recognized as proper explanations of the general rule, to wit: (1) "Real or constructive annexation of the article in question to the realty." (2) "Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected." (3) "The intention of the party making the annexation to make

the article a permanent accession to the freehold; this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of annexation, and the purpose or use for which the annexation has been made." It is unnecessary to discuss the first two definitions, since, for all practical purposes of this case, they are comprehended in the third statement, and of this, Ewell, in his work on fixtures, page 22, says : "Of these three tests, the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others (the first and second statements) seem to derive their chief value as evidence of such intention."

In the case of *Choate* v. *Kimball*, *supra*, this court said: "Without making a detailed recital of the facts in this case, it may be stated that the annexation was sufficient to meet the requirements of the first test; but that the articles could be removed without any injury to the freehold or any material injury to themselves, and that the articles were appropriate and adapted to the use of the realty with which they were connected, but that they were equally appropriate and adapted to the use of other saw mills. The articles may or may not have been fixtures within the first and second tests, and whether they were or were not must be determined by an application of the third." The same, in substance, may be said of the machinery and necessary appliances of the mills in question, and of any other saw mill, and in making this statement we need not assent to or dissent from the statement that it is material whether the articles are so attached as that they may be detached without injury to the freehold, or to themselves, for the mere manner in which the articles are attached may

evidence, not so much the intention of making the annexation permanent or temporary, as an intention to provide the more conveniently for mere possible changes." Applying the third test to the facts in that case, this court held the articles to be personal property, but solely on evidence to the effect, as stated in the opinion, that it was the custom in the locality to regard and treat all such as personal property, and that the mortgage served to express a reference to the existence of this custom in this: that, after an enumeration of the "lands," it contained the word "also," which strongly indicates that what follows in description is exclusive of what has preceded. Neither is such a custom shown by a preponderance of the testimony to have existed in the locality of the property involved in this action. On the contrary, the evidence shows that this mill site had peculiar adaptation and advantages as such, and had been long in use for that purpose, and that it is the custom to regard sites of this character as permanent, and all the machinery attached to the buildings thereon as a part of the realty. Nor is the separating and discriminating word "also," or the like, used in the description in the conveyances of the property under consideration in this case. Therefore, instead of that case being in support of the contention of the appellee in this case, it is rather against it; for surely if in any case there is proof of custom, and the decision is based on that proof alone, the implication is that, had such proof been made, the decision would have been to the reverse, and a like reasoning governs as to the presence or absence of such words as "also" in the connection in which it was used in that case. The corresponding language in the deed from Coy to Blinn is: "Now therefore, be it known that I, L. W. Coy, receiver, in consideration of three thousand seven hundred and fifty dollars, * * * * * * * do hereby grant, bargain and sell unto the said Horace

Blinn, and unto his heirs and assigns, forever, the following described lands,  *  *  *  * together with all the mills, machinery, tools, fixtures, appurtances pertaining to the same. To have and to hold the same unto his heirs and assigns, forever." This means substantially (according to our view of it) the same as the expression "and all the improvements thereon," a phrase of common use in our western country to denote whatever has the character of a physical fixture at the time, and is generally comprehended in the words "appurtenances," "hereditaments," etc., and in this case made to come under the last designation expressly in the *habendum* clause.

The tax books introduced in evidence, giving them whatever weight they are entitled to, in the most liberal view of such testimony, do not show that the mills and machinery pertaining to the same were assessed as personal property. They only show there was assessed as personal property the "materials and manufactured articles," which means, in reference to the saw mill business, logs and lumber and articles made therefrom.

In this case there was a union of title in Coy, as receiver, and also in Blinn, as the vendee of Coy. There is not shown to have been any expression of intention of either party to treat the property as personal property. The language of description in the several conveyances no where shows an intention to classify the property as being of two classes, and, in fact, none of those circumstances which affirmatively show that in the reservation of a vendor's lien the parties meant otherwise than that all was to be treated as realty, since otherwise the reservation would have been a nullity, in the strictly legal sense. It is plain that to treat all the property as real estate was the intention of Coy and Blinn, as expressed in the deed from the one to the other, and there is nothing to show a different intention between Blinn

and Bemis. We therefore are of opinion that the property in controversy was real estate, and the subject of a vendor's lien under the statute and in equity.

What was in reality the nature and object of the conveyance of January 17, 1891, and what was the intention of the parties in making and accepting the same, necessarily rests upon the facts and circumstances in proof, and the evidence as to these, in the very nature of things, is mostly, if not altogether, derived from the parties to the deed of that date. The consideration expressed in that deed being merely nominal, from the nature and description of the property the necessary inference is that the actual and real consideration was different and much greater. The contention of appellee is that the deed is an absolute deed, and that the consideration was the payment by Bemis for Blinn of the purchase money notes to Coy; and that in fact the subrogation rights of Bemis to the vendor's lien held by Coy against the property had been merged in the deed, and that the claim of Bemis therefore rested solely on the deed of 16th January, 1891; and, as that was made subsequent to the lien of the attachment upon the property in the county (mills, machinery, etc.), Bemis' title was subject to that lien.

The deposition of Blinn was taken in Bowie county, Texas, some two or three years after the deed was executed by him to Bemis, in which he stated that Bemis took the deed in satisfaction of everything he (Blinn) owed him (Bemis), and that it was an absolute conveyance. A short time afterwards his depositions were re-taken at the same place, and then he stated that the deed was not in fact intended as an absolute deed, but as a security, and not for the whole of his indebtedness to Bemis, but for the $7,000 or $8,000 he owed Bemis in addition to the purchase money notes which Bemis had paid Coy for him as stated; and in explanation of the

discrepancy between the two statements he said that what he meant in his first deposition by "an absolute conveyance" was that it was a *"bona.fide* transaction and not a pretense." He also stated that the deed was a security for the additional debt only, and that neither on delivering the deed to Bemis nor at the time had the latter surrendered the purchase money notes. Moreover, his previous statements made to outside parties were to the same effect as his corrected testimony.

Bemis' testimony was that the deed was a security, and, in effect, a mortgage, and was given as a security for the additional indebtedness only, and had no connection with or reference to the vendor's notes.

It may be true, and is true, that the testimony of a witness who has made contradictory statements, and of course of one who has testified differently on a previous occasion, is more or less weakened, according to circumstances, unless the contradiction is satisfactorily explained; and yet explanations are always in order, and a witness should not even be denied the privilege of correction at any time before his testimony has been used, or the rules of procedure has given a discretion to the trial court to exclude it, and the discretion has been exercised.

It is admitted in argument, and cannot be success- As to merger fully controverted, that a merger will never be presumed against the interest of the party taking the deed, but it is claimed that "this rule applies only in the absence of evidence tending to show a merger." That is a mild way of stating it. Mergers are not favored either in courts of law or of equity, and it requires evidence to show that the interest of him who holds both rights will *not be prejudiced*, before the rule allowing a merger will be applied; and it is hardly sufficient that the evidence tends to show a case for the application of the rule.

We do not intend by this discussion to admit that the evidence shows this to be a case where a merger can be made; but, rather, to show how far the courts will lean towards the real interest of the holder of the two rights, and, in doing so, how strong the evidence must be to sustain the merger.

In *Smith* v. *Roberts*, 91 N. Y. 475, the court of appeals of New York said: "But while a merger at law (the case at bar is in equity) follows inevitably upon the union of a greater and lesser estate in the same ownership, it does not so follow in equity. There the doctrine is not favored, and the estates will be kept separate where such is the intention of the parties, and justice requires it; and that intention will be gathered, not only from the acts and declarations of the party, but from a view of the situation as affecting his interest, at least prior to the presence of some third person's rights. The evidence in the case before us indicates very strongly both the intention of Smith and the understanding of Benjamin that no merger should take place, and the mortgage remains a subsisting security and a lien upon the one-quarter owned by Benjamin. The evidence relied on is two-fold. It is beyond contradiction that the interest of Smith was strongly against à merger, and that circumstance indicates his intention that none should occur."

The same is undoubtedly to be said of the interest of Bemis in the case at bar being against a merger. It cannot be assumed that under the circumstances he voluntarily released his rights under the subrogation, and took a conveyance which was subject to the rights of a third party, which would materially lessen, if not altogether destroy, his rights, holding under the deed only. His interest determines his intention to be otherwise. Besides, the retention of the purchase money notes after

the deed was given him by Bemis is a strong circumstance which, in the absence of explanation, goes to show their intention to be against a merger.

Finally, we think the testimony of both Blinn and Bemis shows an intention to hold the rights under the subrogation to remain in Bemis, and that the deed was in fact a mere security for the additional indedtedness of Blinn to him. This being the case, there of course could be no merger, for a mortgage (the deed intended as a mortgage) is not superior as a security to the equitable rights of the holder of the purchase money notes, especially in view of the reservation of the lien in Coy's deed, under the statute in such cases provided.

The other questions, whether or not there was an equitable mortgage, and the failure to record the deed in the county of the owner's residence, it is needless to discuss. The plaintiff is not an innocent purchaser, and the claim of the interpleader was presented in time to advise it of the nature of it, and before any vested rights had attached in it.

Reversed and remanded with directions that, if either party should claim a foreclosure of the liens, the property involved will be sold, and the proceeds distributed according to priority as herein indicated.