## OZARK *v.* ADAMS (Two Cases).

### Opinion delivered December 3, 1904.

| 73 | 227 |
|----|-----|
| 83 | 532 |

| 73 | 227 |
|----|-----|
| f86 | 503 |
| f88 | 132 |

1.   FIXTURES—RULES FOR DETERMINING.—The rules for ascertaining whether an article is a chattel or an irremovable fixture are as follows:   (1) real or constructive annexation of the article in question to the realty; (2) appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made.   (Page 232.)

2.   SAME—HOW AFFECTED BY AGREEMENT.—Although the giving by a vendee to his vendor of a chattel mortgage on machinery annexed to leased premises, or a conditional sale thereof with reservation of title in the vendor, is usually equivalent to an express agreement between the parties that the machinery   shall remain personalty, such an agreement will not affect the question whether the machinery is a fixture if the title to the machinery has become merged   in the   vendee. (Page 232.)

3.   SAME — INDICIA OF INTENTION. — The ponderous character of mill machinery, its special construction for the purpose for which a lease was given, the difficulty of detachment and necessity of reconstruction

and readaptation when refitted to another mill, all are indicia of the intention that it shall become a fixture to the leased premises. (Page 234.)

4. SAME—MACHINERY HELD TO BE.—Where the sole consideration of a lease of a building for 91 years was that a mill should be run therein "reasonably regular," an additional bonus having been subscribed by citizens for the purpose of securing the mill, heavy machinery installed into the house, reconstructed and adapted to suit it and the business, acquired the character of an irremovable fixture. (Page 235.)

Appeals from Franklin Chancery and Circuit Courts.

JEPTHA H. EVANS, Judge.

Reversed.

Two suits by the incorporated town of Ozark against W. W. Adams, one in equity to restrain defendant, as plaintiff's tenant, from removing certain machinery from the leased premises; the other at law, to declare a forfeiture of the lease, and to recover the leased premises and machinery thereon. The evidence showed that the engine, boiler and other machinery involved in the suit were not of a portable character, that they were very heavy, were set in stone and brick, and could not be removed easily, nor without injury to the building in which they were located. The facts are sufficiently stated in the trial court's findings of law and fact, which is as follows:

"I find the facts in the case to be that in 1895 W. H. Shults, from Clarksville, Ark., with a view of putting up a flouring mill in Ozark, Ark., communicated with the citizens of said last named town, and visited Ozark for the purpose of discussing with the citizens that project. The citizens of the town of Ozark, or certain of them, promised said Shults, if he would establish such an enterprise in their town, a bonus of $1,000 in cash to be made by the citizens by private subscriptions and the interests of the purchasers of the canning company in the lot of land and the buildings thereon in controversy in this suit, the said land and houses to be used for the purposes of said milling business, and the $1,000 bonus to be used in refitting said buildings for the purposes of the mill business and in part payment of the machinery and fixtures necessary therefor. That pursuant to his arrangements Shults refitted said building at a considerable expense,

adding another story to a part thereof, and ordered from the Great Western Manufacturing Company, of Leavenworth, Kan., the boiler, engine and other machinery and fixtures necessary for the operation of the flouring mill now in suit. That Shults bought said machinery and fixtures from said manufacturing company by written contract in evidence of date August 9, 1895, by which said contract the said manufacturing company retained the title in all said machinery and fixtures until the full payment therefor. That on October 25, 1895, Shults and Jones, Jones having entered into copartnership with Shults, executed a mortgage to the manufacturing company on the engine, boiler, machinery and fixtures aforesaid, including also a leasehold interest in what is known as the canning factory property and certain real estate in Clarksville and Alma, Ark., to secure the purchase money aforesaid; said mortgage taking the place as security of the reservation of title in the machinery aforesaid. That said mortgage was duly acknowledged and recorded. Default in payment occurred, and foreclosure of the mortgage was duly had in the chancery court, and at a sale under said foreclosure proceedings the said manufacturing company became the purchaser of the machinery and fixtures aforesaid, and the leasehold interest in the canning company property, in payment of its judgment for the purchase money of the machinery, boiler, engine and fixtures aforesaid, which said sale was by the court duly approved, and afterwards the said manufacturing company sold and conveyed to the defendant Adams the engine, boiler, machinery and fixtures aforesaid, and the said leasehold interest in the lots and building in suit to the defendant, W. W. Adams, for a valuable consideration then and thereafter paid to said company by defendant Adams, and that defendant Adams has since said purchase by him reasonably regularly continued to operate said mill, and is now in possession thereof and operating the same. That ten persons, purchasers of the canning company's interest in the lot of land and the buildings thereon now in suit, pursuant to the original understanding with Shults, released to the plaintiff all their interest in said property bought by them from the canning company, in order that the plaintiff might convey same to the said Shults or Shults and Jones for the purpose of operating a roller flouring mill. The unexpired term of the canning company was ninety-one years and five months, and that is the term

released by the owners of the canning company interest back to the plaintiff, and that was the interest intended to be conveyed to the said Shults and Jones, but by mistake of the draftsman of said conveyance the plaintiff on December 24, 1896, conveyed to said Shults and Jones said land and house for the term of eighty-one years and five months, intending to convey it for ninety-one years and five months.

"That said conveyance, by the mutual consent of Shults and Jones, the plaintiff herein, and the owners of the canning company's interest, was made upon the express condition that the said Shults and Jones, and their assigns, should operate thereon during the term granted reasonably regular, so as to supply the demands of trade as a roller flouring mill of the capacity of fifty barrels per day, and that upon failure to do so the said land should revert to the plaintiff.

"I further find that prior to the institution of these suits the defendant Adams had entered into contract with persons, living at Booneville, Ark., to sell to them for the purpose of removal to that town, the engine, boiler, machinery and fixtures aforesaid, and was proceeding to carry out said contract of sale and removal on his part when he was restrained therefrom by the issuance of the injunction in the chancery cause of the same style in this court. And that the defendant Adams did not, prior to the institution of this suit, repudiate or deny the holding of the land and house on it as a remote assignee under the plaintiff, but that in this suit he asserts and contends that the instrument is not a lease, and that he is not under the obligation of a tenant by virue thereof.

"Upon this state of facts I declare the law to be that the defendant Adams is the tenant of the town of the land and buildings thereon in this suit, and that he holds the same upon the express condition that he continue to operate thereon a roller flouring mill of the capacity of fifty barrels per day reasonably regularly so as to supply the demands of trade, and that the house on the land at the beginning and the additions thereto made by Shults are not trade fixtures, but a part of the realty, and go with the land.

"That the defendant Adams is the absolute owner of the engine, boiler, machinery and fixtures in suit by virtue of his purchase from the manufacturing company aforesaid, that the

same are trade fixtures, and that he may during his term sell and dispose of or remove the same from the house and soil without in any way violating the legal or equitable rights of the plaintiff herein; but that, upon such sale and disposition or removal or a failure to operate reasonably regularly a roller mill of the given capacity, all of defendant's interest in and to the soil of the lots and the houses themselves will cease and determine and revert to the incorporated town of Ozark."

Plaintiff moved for a new trial on the ground that the finding of facts was contrary to the evidence, and that the court erred in the declarations of law. The motion was overruled, and plaintiff has appealed.

*Rose, Hemingway & Rose,* for appellant.

Trade fixtures, unless removed during the term of the tenant, become a part of the realty. Ewell, Fix. 139; 1 Taun. 188; 68 Md. 478; 110 U. S. 270; 13 Am. & Eng. Enc. 641; 4 Gray, 270. Whether fixtures can be removed or not is a question of intention. 56 Ark. 61; 63 Ark. 628; 65 Ark. 26; 13 Am. & Eng. Enc. 602; 41 Barb. 234. There was no right of removal until the expiration of the term. 10 Bosw. 537; 47 Cal. 56. Without an agreement for removal there was no right. 92 Va. 767; 2 Wall. 291. There can be no removal after expiration of the term. 7 M. & W. 14; 8 Cal. 39; Ewell, Fix. 146; 3 Barn. & Cres. 172; 14 Allen, 177; 13 Am. & Eng. Enc. 653. The creditor, vendee or mortgagee acquires no greater rights than the tenant under whom he claims. 17 Pick. 192; 18 N. Y. App. Div. 282; 62 Conn. 542; 68 Md. 486; 81 Wis. 342.

*W. W. Adams,* for appellee.

Appellee had a reasonable time after term of tenancy to remove his fixtures. 40 Mo. 118; 13 Ill. 525; 98 Mass. 56; 8 Q. B. 913; 56 Ark. 55. Appellee was the owner under the mortgage. 8 Am. & Eng. Enc. 48, 60; 1 Wash. R. P. 27. Appellant is estopped. 10 Ark. 211; 24 Ark. 371; 33 Ark. 466; 44 Ark. 408;

52 Ark. 251; 33 Ark. 465; 2 Herman, Estop. § § 937, 938, 1061, 1063.

HILL, C. J.   These cases, one at law, the other in chancery, were tried before the circuit judge upon the same evidence, and the town has appealed from the judgments.   The Reporter will set out the findings of fact and conclusions of law of the trial judge.   As there is no cross-appeal, the sole question for determination is the correctness of the second declaration of law, on the facts found, as to the machinery being a removable trade fixture.

The rules for ascertaining whether an article is a chattel or an irremovable fixture are thus summarized in *Choate v. Kimball,* 56 Ark. 55:

"1.   Real or constructive annexation of the article in question to the realty.

"2.   Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

"3.   The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made."   This rule has been followed and applied in these cases.   *Bemis v. First Nat. Bank,* 63 Ark. 625; *Monticello Bank v. Sweet,* 64 Ark. 500; *Markle v. Stackhouse,* 65 Ark. 23; *Tenniswood v. Smith,* 72 Ark. 500.

Before the aforesaid rules can be applied the primary question is "the relation of the parties."

The machinery in question was bought with the title reserved to the manufacturing company to secure balance of the unpaid purchase money.   This form of security gave way to a mortgage on the machinery, the leasehold and other property situate without the county.   The giving of a chattel mortgage, reservation of title, conditional sale, or other form of security, is usually equivalent to an express agreement between the parties thereto that the machinery shall be personalty.   13 Am. & Eng. Enc. Law (2d Ed.), 624, 626, and authorities in notes.   This effect is necessary to secure the debt. Had this mortgage, or, as it originally

stood, reserved title, been foreclosed as to the machinery alone, and it alone bought, there could be no question but that Adams could detach it from the realty; succeeding to the rights of both parties who had contracted that it was a chattel, not real estate. But such was not the case. It was sold with the leasehold as part of the assets covered by the mortgage, bought in by the plaintiff, and sold to Adams as bought, an entirety. There is high authority for holding that where a chattel annexed to the soil is sold to the owner of the realty, that fact changes its prior personal character into an irremovable fixture. *Curtis* v. *Riddle*, 7 Allen (Mass.), 185. Passing that, and going to the question broadly: the purchaser at the foreclosure sale (to whose rights Adams succeeded) acquired the rights of all parties to the suit, that of the manufacturing company and of the lessees. Sand. & H. Dig., § 5943; 2 Jones on Mort. § 1654; Wiltsie on Mort. Foreclosures, § 577. The sale under foreclosure necessarily wiped out the debt against the machinery, and the right to treat it as personalty by virtue of the original character between the parties ended with the accomplishment of the purpose thereof; and of course a merging of interests of those contracting parties into the same person ended that contract. The effect of the purchase of the leasehold was an assignment thereof to the purchaser. Wiltsie, Mort. Foreclosures, § 577. Adams succeeded to the rights and limitations of Shults, the original lessee, and was the owner of his leasehold and the machinery thereupon annexed, freed of the mortgage lien, and freed of the contract in that mortgage treating the machinery as personal property. Therefore the relation of Adams to the town was that of the original lessee, Shults; and his rights and liabilities are to be measured as if he were Shults, instead of Adams, for he stands in Shults' shoes.

Adams ran the mill in conformity to the Shults lease for over two years, then attempted to remove the machinery as a trade fixture not annexed to the realty. Viewing the facts from the standpoint of the original lessee, and applying the rules aforesaid, the solution is plain. The value of the two first rules is evidentiary, to ascertain the intention of the annexation from the manner thereof and purpose of the article used. In regard to the machinery, there are well defined rules to determine the character of the annexation which are thus summarized by Mr. Wiltsie: "Where the chattel, as attached to the realty, is useful

and necessary to its enjoyment, and adds value thereto, and when detached loses its character and usefulness, the chattel becomes a fixture, and passes with the freehold." Wiltsie, Mort. Foreclosures, § 428. The ponderous character of the machinery, its special construction for the purpose for which the lease was given, the difficulty of detachment and necessity of reconstruction and readaptation when refitted to another mill, are all *indicia* of the intention to become permanent.

Passing to the most important, the third rule—the intention—the lease was for a period of ninety-one years, and the sole consideration therefor was that a mill be run thereon "reasonably regular," of a certain daily capacity; a building was indirectly donated, and a bonus given by the public-spirited citizens to found this enterprise, which it was thought would be of benefit to the community and profit to the miller. The enterprise came into being impressed with the intention to be run "reasonably regular" in return for these public gifts; and the machinery was installed into the house, reconstructed and adapted to suit it and the business, on a leasehold the term of which ran for a period beyond the life of any machinery. This is totally unlike sawmills, which are placed to cut lumber for a season and then be moved on to another stand, and totally unlike a tenant putting in machinery to be run during a year or a few years (periods much shorter than the life of the machinery), and who is compensating with rent the owner for the use of the leasehold. These are *indicia* of intention to remove after a season. The facts here show a clear intention to respond in good faith to the generosity extended, and establish a mill as permanent as such things can be, and to run it "reasonably regular," not for a day nor a year, but continuously. Without such intention having been manifested to the satisfaction of this municipality and these donors, the mill would never have been established. This intention of permanency in the installation of the machinery is what fixes its character as irremovable fixture. The subsequent failure of the enterprise can not change the status fixed at the time the machinery became part of the realty.

Therefore the trial court erred in the second declaration of law, to the effect that the machinery was a trade fixture and removable.

Reversed and remanded.