In re W. O. CRAIG MFG. CO.

(District Court, W. D. Arkansas, Ft. Smith Division. December 14, 1912.)

No. 374.

FIXTURES (§ 21*)—CONDITIONAL SALE OF MACHINERY—PRIORITIES AS BETWEEN VENDOR AND MORTGAGEE OF REALTY—"REAL PROPERTY."

Under the law of Arkansas as settled by decision, the general rule is that title to personal property sold may be retained by the vendor until the purchase price is paid, and such title is good as against any subsequent purchaser or lienholder without regard to the question of no-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tice; but with regard to machinery which, from its character, is intended to be permanently located, the rule is modified, and such machinery, set in place for the purpose to which it is adapted in such a way and under such conditions as to indicate permanency, must be regarded as "real property," and the title of a purchaser or mortgagee of such real estate without notice is superior to that of the vendor of the machinery.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 47–56; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 7, pp. 5939–5951; vol. 8, pp. 7778, 7779.

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

In the matter of the W. O. Craig Manufacturing Company, bankrupt. On petition in intervention of Triumph Electric Company to reclaim property, and objection of J. O. Patterson. Petition dismissed.

John I. Worthington, L. W. Gregg, and Hill, Brizzolara & Fitzhugh, all of Ft. Smith, Ark., for intervener.

Guthrie, Gamble & Street, of Kansas City, Mo., and Read & McDonough, of Ft. Smith, Ark., for objector.

YOUMANS, District Judge. The W. O. Craig Manufacturing Company, a corporation, was adjudicated a bankrupt on the 27th of July, 1912. This concern was formerly the Siloam Springs Cold Storage & Ice Company; the former name having been substituted for the latter. Under the latter name the bankrupt bought from the Triumph Electric Company, under the trade-name of the Triumph Ice Machine Company, on two orders, dated, respectively, January 28, 1911, and February 25, 1911, certain machinery for an ice manufacturing plant at Siloam Springs, Ark. Notes were given for the purchase price. These notes are unpaid. The written contract between the bankrupt and the intervener contained the following provisions:

"The title to all material furnished by the company shall remain in it until full purchase price has been paid in cash, with full right of repossession by the company upon purchaser's default of any act or payment due under this contract; and purchaser agrees that company shall have the right to retain all the moneys, that may have been paid by the purchaser, as liquidated damages for purchaser's default. Purchaser agrees to do all acts necessary to protect such retention of title in the company, and the taking of any security whatsoever shall not operate as a waiver nor as otherwise affecting this retention of title. The company, at its election, shall be entitled to a conveyance of said material by way of mortgage, in order to secure the payment of the purchase price. Should the purchaser become insolvent or default in the performance of or payment of any part of this contract, including any obligation given for any part of it or failure to execute notes as agreed upon, the whole purchase price shall forthwith become due."

In the spring of 1911 this machinery was installed in a building constructed for that purpose on a piece of land adjacent to a railroad. The land appears to have been put to no other use. On the 3d day of June, 1911, to secure the repayment of a loan of $30,000 made on that date, the bankrupt, under its name of the W. O. Craig Manu-

facturing Company, executed a mortgage to the Commerce Trust Company, of Kansas City, Mo., on its plant and personal property used in connection with its ice and ice cream manufacturing business.

This mortgage and the notes secured thereby were afterwards assigned to J. O. Patterson. After the adjudication in bankruptcy, Patterson, in the bankruptcy proceedings, claimed all the property described in the mortgage, and sought to have the same sold and the proceeds applied to the payment of the mortgage debt. This was contested by the intervener, which claimed the machinery sold by it to the bankrupt by virtue of the retention of title in its contract of sale. The property was by the referee ordered sold free from liens, it being provided, however, that an amount, out of the proceeds of the sale, sufficient to pay intervener's claim, should be retained by the trustee, to await the decision on the intervention of the Triumph Electric Company. The intervention is based on the clause of the contract above quoted. Patterson filed an answer to the intervention. The answer sets up two grounds of defense to intervener's claim: (1) That the contract between the intervener and the bankrupt contained a guaranty as to the producing capacity of the plant, and that the plant will not produce the amount of ice guaranteed by the contract. (2) That the machinery claimed by intervener became part of the real estate, and passed to the mortgagee under the mortgage subsequently executed, and that it afterwards passed to Patterson under his purchase at the sale made by the trustee.

With regard to the alleged failure of the plant to produce the guaranteed capacity, the testimony is not sufficient to show such failure. It does not appear that the conditions required in the contract of guaranty were complied with. That conclusion having been reached, it is unnecessary to consider the question as to whether Patterson is in an attitude to oppose a defense on the alleged violation of the guaranty.

The real question in the case is whether the property in controversy became a part of the realty and passed under the mortgage, or remained personal property subject to the terms of the contract between the bankrupt and the intervener.

As between the vendor and the W. O. Craig Manufacturing Company, there is no question but the machinery retained the character of personal property. The controversy, however, does not arise between them. The material purchased was set up as a completed ice plant, intended to be permanent, in a building specially constructed for that purpose, on a piece of ground of comparatively small area, conveniently situated near a railroad for the manufacture and shipment of ice. As between the mortgagor and mortgagee, the machinery was a part of the realty. J. O. Patterson, as assignee of the notes and mortgage and as purchaser at the trustee's sale, stands in the shoes of the original mortgagee. There is nothing to show that either the mortgagee or Patterson had notice of the retention of title by the Triumph Ice Machine Company. The question as to the superior right must be determined by the law of the state of Arkansas, as held in the case of In re Sunflower State Refining Company (C. C. A.) 195 Fed. 180. This case arose in Kansas, and was decided under a statute of that

state requiring the filing in the office of the register of deeds of a writing or promissory note, evidencing the conditional sale of personal property, and retaining the title to the same in the vendor until the purchase price is paid in full. There is no such statute in Arkansas or any other statute on the subject. The law therefore must be found in the decisions of the Supreme Court of the state. It clearly appears from these decisions that the title to personal property can be retained by the vendor until the purchase price is paid, and that the title of such vendor may be enforced against any subsequent purchaser or lienholder, without regard to the question of notice. Carroll v. Wiggins, 30 Ark. 402; Andrews v. Cox, 42 Ark. 473, 48 Am. Rep. 68; McIntosh v. Hill, 47 Ark. 363, 1 S. W. 680; McRea v. Merrifield, 48 Ark. 160, 2 S. W. 780; Simpson v. Shackelford, 49 Ark. 63, 4 S. W. 165.

With regard to machinery which from its character is intended to be permanently located, the rule is modified as to a subsequent purchaser or lienholder. Such machinery may remain personal property until paid for, or until the debt secured by the mortgage is paid. Ozark v. Adams, 73 Ark. 232, 83 S. W. 920. In this case and in the case of Choate v. Kimball, 56 Ark. 55, 19 S. W. 108, three rules were laid down for determining whether a given article is a chattel or an immovable fixture, as follows:

(1) Real or constructive annexation of the article in question to the realty.

(2) Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

(3) The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed; the relation and situation of the party making the annexation, and the policy of the law in relation thereto; structure and mode of the annexation and the purpose or use for which the annexation has been made.

With regard to the first rule it is clear that there was a real annexation of the machinery in question to the realty. With regard to the second rule, it is equally clear that the machinery was specially adapted to the part of the realty to which it was connected. The third rule, so far as it takes into consideration the actual intention of the parties, cannot be applied to this case because the owner, as shown by the testimony, had one intention in his dealings with the intervener and another in making the mortgage to the Commerce Trust Company. So far as the intervener is concerned, the owner intended and contracted that the machinery should remain personal property. So far as the mortgagee is concerned, the owner intended and contracted that it was part of the realty. Under such conditions, according to the Arkansas cases, the rights of the parties must be determined by the element of notice. In the case of Ozark v. Adams, supra, the court said:

"The ponderous character of the machinery, its special construction for the purpose for which the lease was given, the difficulty of detachment and necessity of reconstruction and readaptation when refitted to another mill, are all indicia of the intention to become permanent."

Any man contemplating the purchase or the taking of a mortgag on the ice plant would have been warranted in assuming that the machinery was part of the realty. It is not sufficient to say that the vendor did all he could do under the law to protect his title, and security. It is equally true that the mortgagee did all it could do under the law to investigate the title. In the case of Choate v. Kimball, supra, the decision relates to sawmill machinery and was based on two points: (1) That the machinery in question was placed on the land subsequently to the execution of the mortgage. (2) That the parties contracted with reference to the custom of the country, which was, "to put such articles upon lands for temporary use, and to remove them as removal became desirable."

The case of Brannon v. Vaughan, 66 Ark. 87, 48 S. W. 909, is directly in point. In that case land had been sold and a bond for title given. The purchase price had not been paid. It was provided that, on default in the payment of the purchase money when due, the contract to convey should be forfeited at the election of the vendor. The vendee went into possession. By agreement with him, and with the knowledge and consent of the vendor, a third person erected on the land a house, with the privilege of removing it. A similar agreement was made by the vendee with still another person, by which a room was added to another house on the land. The vendor had no notice of this second agreement, and did not consent thereto. The vendee failed to meet his second payment and forfeited his rights under the contract. The parties who constructed the house and the room tore them down and removed the lumber. The owner of the land brought suit in replevin for the lumber thus taken. It was held that he could not recover as to the house with regard to the agreement for the removal of which he had notice prior to its construction, but it was held that he could recover with regard to the room, of the agreement for the removal of which he had no notice.

This case was followed in the case of Peck-Hammond Co. v. Walnut Ridge School District, 93 Ark. 77, 123 S. W. 771. In the last-mentioned case, a contractor had entered into a contract with the school district to erect a schoolhouse and to install therein a heating plant. The heating plant was purchased from the Peck-Hammond Company by the contractor, and the contract between them provided that the title to the material furnished should remain in the vendor until paid for. The heating plant was installed in the schoolhouse, and the contractor failed to complete the building and to pay for the plant. The school district knew nothing of the terms of the contract between the contractor and the Peck-Hammond Company. The company instituted a suit in replevin for the heating plant. It was held that it could not recover. In its opinion the court said that there was "a necessary inference that the heating plant was affixed permanently to the structure, and a conclusive presumption that it should become a part of the realty." This was the ruling of the court, notwithstanding the fact that in the contract between the contractor and the Peck-Hammond Company the title to the heating apparatus was expressly

retained. The court held that such provision in the contract did not affect the school district because it had no notice of it.

In the case of the Kansas City Southern Railway Company v. Anderson, 88 Ark. 129, 113 S. W. 1030, 16 Ann. Cas. 784, it was held that machinery in a planing mill was a part of the realty in a suit to condemn the property for railway purposes, and the railway company was required to take and pay for the machinery under its condemnation proceedings.

From the cases cited, the rule to be deduced is that machinery set in place for the purpose to which it is adapted, in such a way and under such conditions as to indicate permanency, must be regarded as real estate, and that the title of the purchaser of such real estate without notice is superior to that of the vendor of the machinery, the title to which was retained in a contract of sale.

The petition of the intervener will therefore be dismissed.