## CHOATE *v.* KIMBALL.

### Opinion delivered April 9, 1892.

1.  *Sale—Failure of vendor to execute deed.*

    Where one of the considerations of a note is the price of certain land which the vendor agreed to convey to the vendee, who was placed in possession, the failure of the vendor to execute a deed to the vendee will not warrant a reduction of the note *pro tanto* if such failure is attributable solely to a default on part of the vendee, as where the latter permits the land to forfeit for taxes.

2.  *Fixtures—Right of mortgagor to remove—Custom of the country.*

    Where a mortgagor places on the premises saw mill machinery which could be removed without injury to the freehold and which he intends to remove, though such intention is not at the time disclosed to the mortgagee, such articles do not become fixtures if there is shown a general custom in the country to put them upon land for temporary use and to remove them at will.

Appeal from Yell Circuit Court in Chancery.   Danville District.

JORDAN E. CRAVENS, Judge.

George L. Kimball brought suit in 1890 to foreclose a mortgage executed in 1880 by T. J. Choate and W. D.

Scott, on the south half of section 2 in township 6 north, range 22 west; also one engine and boiler, one Straub mill, one saw mill complete, and all pipes, belts, pulleys and all other attachments to make the above machinery in complete running order. The mortgage was executed to secure payment of two notes aggregating $3,594.00, given for the purchase of the above mentioned property. The complaint further alleged that Choate had purchased Scott's interest in the above property, and had subsequently located and erected on said land a new boiler, a new saw rig, a Curtis & Co. saw, a planing machine, shingle mill and outfit, all of which plaintiff claimed as fixtures and subject to said mortgage; that Choate had sold part of the new machinery and mortgaged the remainder. All persons interested in the property were made parties. Plaintiff's prayer was that defendants be enjoined from selling or removing the machinery or any part of it from the premises, for judgment for the balance due on the notes, and that the land and machinery be sold for the satisfaction thereof.

Choate answered that, when he bought the land and machinery described in the complaint, he also bought from plaintiff and one Perry certain lands, described in his answer and known as the "Dyer homestead," which were valued at $1400, which amount was part of the consideration of the two notes described in the complaint; that he had, at divers times and places, demanded a deed for said land, but plaintiff has failed, neglected and refused to execute him a deed therefor. He further alleged that the new machinery mentioned in the complaint was purchased by him, at different times from different parties, seven, eight and nine years after plaintiff's mortgage was executed; that it was in no wise permanently attached to the freehold or to any permanent buildings thereon, and that his intention, at the time the machin-

ery was placed on the land, was to remove it as soon as he could secure a suitable pinery. The answers of the other defendants, in so far as this suit affects or relates to them respectively, are the same as Choate's.

It was shown in evidence that, after the mortgage to the plaintiff was executed, the "Dyer homestead" was permitted by defendants to forfeit for taxes. The new boiler attached to the mortgaged premises weighed 6,000 pounds, and was held in position by its own weight. It was the custom of the country to move boilers of this kind from one pinery to another. None of the machinery was so attached to the freehold that its removal would result in injury thereto.

Upon the hearing, the court rendered judgment for plaintiff against defendants T. J. Choate and W. D. Scott for $2,540, principal and interest, and decreed sale of south half of section 2, township 6 north, range 22 west, and all the machinery mentioned and described in the mortgage sued on, and of the new boiler, saw rig and carriage, Curtis & Co. saw and attachments, to satisfy the mortgage; from which decree the defendants have appealed.

*W. D. Jacoway* and *U. M. & G. B. Rose* for appellants.

1. There was a partial failure of consideration of the notes and mortgage. The "Dyer homestead" was a part of the consideration, and Kimball & Perry agreed to execute a deed for said land ; this they have failed to do, and the consideration has failed to the extent of the purchase money for said lands, $1400. 1 Daniel, Neg. Inst. (3d ed.), sec. 201 *et seq.*; 13 Ark. 9 ; *id.* 522 ; 12 *id.* 699 ; 14 *id.* 356 ; 17 *id.* 229 ; *id.* 254 ; 53 *id.* 159. .

2. The new machinery not mentioned in the mortgage cannot be treated as fixtures and be held subject to the mortgage. As between mortgagor and mortgagee the following requisites must exist :

FIRST : Actual annexation to the realty, or something appurtenant thereto.

SECOND : Appropriation to the use or purpose of that part of the realty with which it is connected.

THIRD : The intention of the party making the annexation to make it a permanent accession to the freehold. Devlin on Deeds, vol. 2, sec. 1211 ; 59 Am. Dec. 634 ; Ewell on Fixtures, 21, 22 ; Boone on Mortgages, 241, 104–5, and note 5 ; 14 Am. Dec. 300 and note ; Jones on Mortg., vol. 1 (3d ed.) 429 *et seq.* Of these three tests, the clear tendency of modern authority seems to give pre-eminence to the intention to make the article a permanent accession to the freehold. 14 S. W. Rep. 899 ; Ewell on Fixtures, p. 22. See also 7 Nev. 37 ; 48 Miss. 1 ; 25 N. J. Ex. 496 ; Ewell on Fixtures, 39 *et seq.* All the facts, the custom of the country, the mortgage of them as chattels, the temporary character of the structure, etc., show that the new machinery was never intended as a fixture. Ewell on Fixtures, pp. 109, 224, 283–6 ; Devlin on Deeds, secs. 1209–12 ; 31 Mich. 440 ; 1 Oh. St. 511–529 ; 53 N. J. 380 ; 1 Mo. 508 ; 25 Ga. 331 ; 28 Vt. 428 ; 30 *id.* 452 ; 7 Am. Dec. 223 ; 21 *id.* 720 ; 2 Peters, 137.

3. A chattel mortgage executed in view that chattels are about to be annexed to realty is regarded as sufficient evidence of the intention that they are to retain their character as chattels. Jones, Ch. Mortg. 125, 659 ; Jones, Mortg. (3d ed.), vol. 1, 814, *et seq.; ib.* 431, 1080.

*R. C. Bullock* for appellees.

1. The proof fails to show that the " Dyer homestead " was any part of the consideration of the notes. Besides, parol testimony was not admissible to vary or contradict the recitals of the note and mortgage. Pars. Cont. (5th ed.), pp. 429, 430 ; 2 Story, Eq. (12 ed.), sec. 1531 ; 1 Dan. Neg. Inst., secs. 204–5.

2. The saw mill and machinery were fixtures and subject to appellee's mortgage. The mere intention of Choate is not sufficient to change the rule. Boone on Real Property, sec. 9 ; *ib.* sec. 9, note 23 ; 19 Barb. 317 ; 12 N. Y. 170 ; 60 Mo. 339 ; Jones on Chat. Mort. (3d ed.), sec. 129, 130 ; 48 N. Y. 278 ; Ewell on Fixtures, 281, 282, 283–6 ; 97 Mass. 279 ; 53 Ark. 526.

HEMINGWAY, J. The parties agree in stating two questions for our consideration, which we find to be decisive of this cause. They are as follows :

First. Is there a partial failure of consideration of the notes and mortgage sued on ?

Second. Is the new machinery which is involved in this suit, which is not mentioned in the mortgage, and which was purchased more than seven years after the execution of said mortgage, to be treated as fixtures, and be held subject to said mortgage ?

Upon the first question we have found no difficulty. For if it be conceded that Kimball and Perry sold the Dyer homestead to Choate and Scott under an agreement to make a deed when they received a patent, and that the price of the land constituted a part of the consideration for the note and mortgage sued on, still the failure to make a deed will not warrant a reduction of the note, where such failure is attributable alone to a default on part of the purchaser.

1. When vendor not responsible for failure to execute deed.

If the sale included that land, the purchasers were placed in the immediate possession of it and permitted to enjoy it so long as they desired. Their possession was never disturbed by their vendors, and they got every thing for which they contracted except the legal title, for which it is not shown they made any demand. Several years after they had been let into possession, and while they were in its undisturbed enjoyment, it was forfeited to the State for the non-payment of taxes.

The forfeiture, which divested the vendors of their legal title, was the only cause of their failure to make a deed, and it arose without any fault on their part; for although no legal title had been made, the purchasers, having been let into the possession and permitted to hold it, were bound to pay the taxes ; and when they failed to do so and the lands were forfeited to the State, the obligation to make a deed could not be performed ; as such result was attributable to them, the obligation was released, and no right arose to a reduction upon the price agreed upon.

2. Right of mortgagor to remove saw mill. Upon the second question we have encountered more difficulty. If the boiler, saw-rig, shingle mill and planer were fixtures, they became subject to the prior mortgage. Whether they were or were not fixtures, is the question that has perplexed us. The rule for the determination of the question varies according to the relation of the parties between whom it arises ; and it is less liberal in permitting a removal as between mortgagor and mortgagee than as between landlord and tenant.

The term "fixtures" has reference to articles which, in and of themselves and irrespective of annexation to land, are of a chattel nature, but by reason of such annexation have become a part of the land. The point of difficulty arises in determining when there has been such annexation of chattels as to make them a part of the land, or irremovable fixtures.

It is said that the true criterion, established by the authorities, consists in a united application of several tests, as follows :

"1.   Real or constructive annexation of the article in question to the realty.

"2.   Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

"3.   The intention of the party making the annexation to make the article a permanent accession to the

freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made."

Mr. Ewell says that "of these three tests, the clear tendency of modern authority seems to be to give preeminence to the question of intention to make the articles a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention." Ewell on Fix. p. 22.

Without making a detailed recital of the facts in this case, it may be stated that the annexation was sufficient to meet the requirements of the first test ; but that the articles could be removed without any injury to the freehold or any material injury to themselves, and that the articles were appropriate and adapted to the use of the realty with which they were connected, but that they were equally appropriate and adapted to the use of other saw mills. The articles may or may not have been fixtures within the first and second tests, and whether they were or were not, must be determined by an application of the third. The actual intention of the mortgagor in making the annexation was that the articles should not become a permanent accession to the freehold, but such intention was not disclosed to the mortgagee ; and whether the mortgagor's undisclosed intention can continue their chattel nature after actual annexation is a question upon which the authorities do not agree. The affirmative has been held by the courts of New York and Kentucky, in cases where the articles could be removed, without injury to the mortgaged property and were not within the contemplation of the mortgagee in taking his mortgage. *Tifft* v. *Horton*, 53 N. Y. 377 ; *Clore* v. *Lambert*, 78 Ky. 224.

But we have not deemed it necessary to determine that question.

The authorities hold that where the parties so agree such articles will retain their chattel nature, and to this end an agreement implied is as effective as one expressed. It is shown that a custom obtained, in the country where the land lies and the mortgage was made, to put such articles upon land for temporary use and to remove them when removal became desirable—in the light of which they would not, in ordinary understanding, be a part of the land, but removable chattels. When so attached as to be thus regarded, they do not become fixtures under the third test. *Wolford* v. *Baxter*, 33 Minn. 12.

It might be inferred from the mortgage itself that it was made with reference to this custom ; for, in describing the mortgaged property, it enumerated " lands " and " also " other property, embracing machinery upon the land of the same character as that in dispute. If land included the machinery upon it, no specific description of the machinery was necessary ; and the fact that it is found indicates that the parties did not treat it as a part of the land. And as they treated such articles as chattels, and did not stipulate that the mortgage should embrace such of a like kind as should be thereafter put upon the land, it would be implied that the mortgage was not intended to cover them. But however that might be, as the custom is shown to have been general, the inference is that the parties contracted with reference to it. *Varner* v. *Nobleborough*, 2 Greenl. 121, and cases cited ; Ewell on Fix. p. 224.

We conclude that the intention of the mortgagors, with the implied assent of the mortgagee, preserved the chattel nature of the articles, and that they passed by sales as chattels.

The judgment, in so far as it effects the mortgagors and the property described in the mortgage, is affirmed ;

but in so far as it affects the defendants, who claim the machinery not described in the mortgage, under sales from the mortgagors, it is reversed, and the bill must be dismissed.