### FIELD v. MORRIS.

Opinion delivered May 30, 1910.

1. FIXTURES—RIGHT TO REMOVE.—To justify one in removing houses, machinery, etc., from land, it is sufficient to show that he was not a

trespasser in going upon the land and that the house, machinery, etc., in controversy were not annexed to the soil in such manner as to become immovable fixtures. (Page 274.)

2.  SAME—REMOVAL OF TRADE FIXTURES.—Where a building and gin machinery were placed on land by a tenant in such manner that they might be put on rollers and removed, and with the intention that they might be removed by him during the term, they will not be considered as permanent fixtures, but as trade fixtures and subject to removal. (Page 274.)

Appeal from Lawrence Circuit Court; *Charles Coffin,* Judge; affirmed.

STATEMENT BY THE COURT.

In February, 1892, John Darter and his wife (the latter relinquishing dower) conveyed a tract of land in Lawrence County, Arkansas, to W. A. Townsend. The grantors made the following reservation: "Reserving to ourselves the use of one and one-half acres free of rent where the mill and gin stands in southwest corner of said tract, with the privilege of removing buildings and machinery therefrom, * * * and we are to have the use of one and one-half acres free of rent as long as we or others holding under us may want to use same for running machinery at said point."

The grantee, W. A. Townsend and his wife, conveyed the land to H. W. Townsend with the same reservation; and the latter on the 3d day of October, 1901, conveyed three acres of the same land in the southwest corner thereof to B. W. Field, and the deed to Field contained the same reservation as to the use of the one and a half acres. On the 28th of November, 1902, B. W. Field conveyed the three acres to his wife without the reservation. On the 25th of September, 1903, Mrs. Field and B. W. Field conveyed the same land to Carrie E. Stevenson, and she reconveyed it on the 2d day of October, 1903, to Laura C. Field.

On the 28th day of September, 1903, John Darter conveyed to J. W. Morris by deed as follows: "All of my right, title, privilege and interest reserved by me to 1½ acres of land lying in the south half of the southwest quarter of section 29, township 17 north, range 2 west, described more fully in deed made by me to W. A. Townsend, in which I reserve the 1½ acres free of rent as long as I or those holding under me keep

or run machinery thereon. The reserved privilege to be had and held by the said Dr. J. W. Morris as holding under me, to whom I deed, convey and transfer said privilege."

Morris took possession of the one and a half acres, and this suit was instituted by appellant against him for the land and damages. The cause came here on appeal (*Field* v. *Morris,* 88 Ark. 148), and we held that the reservation in the deed of Darter was personal, and died with him. The cause was reversed and remanded for new trial. There was a motion for reconsideration, and in passing on this we said: "The only question decided was: 'Was the right to use the one and a half' acres appendant or appurtenant to the land, or was it personal? The case will go back to the circuit court for a new trial. Appellee can present his rights to improvements and to remove the same to that court for consideration and adjustment." On the second hearing the appellant by amended complaint alleged that appellee had without her consent and against her protest erected in 1903 the houses and machinery on the one and a half acres of land, that she was the owner of the land and buildings and machinery thereon, and was entitled to rent during the time appellee had occupied same. She prayed judgment on this account in the sum of $1,500. The appellee in an amended answer set up the following:

"That said buildings and machinery were placed upon said lands while he was in the peaceful possession of the same and holding under said conveyances, which were color of title. That under the law he is entitled to be reimbursed for whatever improvements or machinery he may have placed upon said lands as hereinbefore set out. That at the time of the purchase of said property by the defendant, Berry Field, the husband of this plaintiff, was the owner of said lands, and he represented to this defendant that the title was perfectly good, and that he would not be disturbed in the enjoyment of the same, which was known to this defendant, and by which she is now estopped to claim title.

"Further answering, defendant says that said buildings and machinery are not permanent fixtures upon said land, but the intention at the time of their location was that they should be and remain as personal property and be removed by the de-

fendant. He therefore prays that he be given judgment against the plaintiff in the sum of $5,000, being the value of said improvements, or that he be permitted to remove them, for costs and all proper relief."

This pleading, which is designated by counsel as an amended answer, was really a cross complaint also against appellant for the improvements on the land. Appellant answered this cross complaint, denying that appellee placed certain machinery and buildings on the land under and by virtue of the two conveyances set up by him, and denying that the buildings and machinery were placed on the land while appellee was in possession and holding under color of title. On the issue as thus made the cause was submitted to the jury.

Appellee introduced his deed from Darter set out above and the following instrument: "I, C. Davis, do hereby grant, bargain and sell all my right, title and interest in all my machinery, mill, gin, and all things belonging thereto to J. W. Morris, to have and to hold the same unto the said J. W. Morris, for which I am paid in full.

(Signed)                              "C. Davis."

Davis testified that he bought the machinery, etc., mentioned in the above instrument from John Darter and the right to enter upon the ground and to erect and use other machinery which he placed on the ground after getting possession; that Berry Field knew, at the time that the machinery was being erected there, that witness sold all to Morris and put him in possession the same as witness had gone into possession under Darter.

One witness testified: That the machinery was not fastened to the house; that the boiler and engine were not enclosed in brick and mortar; that they were covered with dirt; that the engine bed was not permanent; that it was just set on stones that were laid on the ground; that the building could be taken and put on rollers and rolled away.

Berry Field testified that Dr. Morris went into possession of the land in controversy under him and with his consent; that he helped to haul the machinery and other materials and put it on this ground, and at that time he was the owner of the land. "I knew that the buildings were to be erected and

the machinery operated there, and I agreed to it. At the time I hauled the machinery there, at that time I showed Dr. Morris where to put the wire fence for inclosing his gin yard, and he fenced in the premises with my approval. I owned the land up to the time Laura Field and myself made the deed to Carrie Stephenson. I told Dr. Morris there would be no rents as long as I owned the lands or as long as they were in my possession."

J. W. Morris, the appellee, testified: "In the erection of buildings and machinery on the lands in controversy, I was careful to erect them up off the ground, so that if it became necessary they could be put on rollers and taken away. The cotton house and all the other houses were erected in the same way, except the boiler room, which is not a part of the present gin building. It was already there. I covered it and put it in good condition. I assessed the buildings, machinery, there as personal property and paid taxes on it. I bought the machinery that is located on this property at the present time from the Gullett Gin Company, of Meek City, Ill. They reserved the title to the property until it was fully paid for. The houses were not all erected on this land and the machinery placed there before I got the deed from Darter. Will Field never came to me and said anything about not putting up the buildings or placing machinery there until after it was done. I thought I had peaceable possession; for I came and looked over the court records, and Berry Field told me everything was all right. I advised with attorneys, and they said everything was all right. Darter died on the 4th of March, 1904."

The jury returned the following verdict: "We, the jury, find for the defendant for the removal of the machinery and buildings and for the plaintiff in the sum of $210 with six per cent. interest."

Thereupon judgment was rendered August 27, 1909, in favor of Laura C. Field against J. W. Morris for $241.50, "and that the defendant be allowed 30 days in which to remove his house and machinery from the 1½ acres of land belonging to Laura C. Field."

The appellant appealed "from so much of the judgment herein as allows the defendant to move this house and machinery from this land."

*Geo. Dent*, for appellant.

A bond for title is not color of title. 47 Ark. 528; 18 How. 56; 67 Ark. 188. Carelessness is not to be rewarded by the bestowal of the benefits under the betterment act. 59 Ark. 145. The grantee of a way is limited to use his way for the purposes specified in his grant. Wash. on Easements, § § 183 and 186. A reservation of a way ceases on the destruction of the property. 138 Ind. 200; 46 Am. St. R. 376; 84 Hun 158. There is no right of removal. 29 Wis. 655; 5 Blackf. 556; 36 Am. Dec. 556; 2 Greenl. 542; 52 Wis. 554. A purchaser of land must take notice of his title. 66 Miss. 21; 14 Am. St. R. 538. The property sought to be removed passed to the purchaser of the land. 65 Ark. 26.

*H. L. Ponder*, for appellee.

A person making improvements will be presumed to have acted in good faith. 61 Am. Dec. 73; 1 Sawy. 15. Notice of an adverse claim does not necessarily negative good faith. 43 S. W. 1094. A will, though defective on its face, is color of title. 70 Ark. 483. If a person improves land, believing that he is the owner, he is entitled to pay for the improvements. 51 Ark. 275; 86 Ark. 401. A deed from one without title is color of title. 15 Ga. 336; 53 N. Y. 287; 66 Ala. 332; 58 Ga. 427; 7 Hill 476. The deed need not be recorded to be color of title. 21 How. 493. Neither need it be acknowledged. 7 So. 841; 47 N. W. 59; 54 Mo. 105; 84 Mo. 352. A defective or void deed constitutes color of title. 10 Fed. 531; 47 Fed. 614; 48 Am. Dec. 226; 58 *Id.* 549; 3 Me. 316; 10 S. E. 991; 5 Vt. 209; 70 Am. Dec. 473; 77 Am. Dec. 586. As to what will constitute color of title, see 148 U. S. 301; 24 Ala. 347; 59 U. S. 50; 18 Am. Dec. 463; 66 Ga. 169; 33 Ga. 239; 47 Ark. 528; 5 Fed. 899; 47 Fed. 614; 6 N. W. 403. The property was trade fixtures. 29 Am. R. 560; 55 *Id.* 817; 85 Am. Dec. 745; 36 *Id.* 556; 55 Fed. 229. The purchaser of the land acquired no title to the machinery. 72 Ark. 500. The rigor of the ancient law with regard to fixtures must yield to the contingencies of modern times. 12 Abb. Pr. 393. A tenant at sufferance has the right of removal. 26 Am. R. 697.

WOOD, J., (after stating the facts). The only question presented by this appeal is whether or not appellee had the right to remove the house and machinery from the land.

The reservation in Darter's deed gave him and tenants under him the right to hold as long as Darter lived. When Darter died, the right to hold the land by any one claiming under him was extinguished. Such was the effect of the holding of this court on the former appeal, where we said: "The deed says, 'as long as we or others holding under us may want to use same for running machinery at said point.' The last quotation from the deed shows only how long Darter and wife were to have the use of the land free of rent. 'Others holding under us' refers to persons holding like tenants." Appellee under his deed from Darter might enter and hold as long as a tenant of Darter could hold. A tenant of Darter could hold, if such were the contract, as long as Darter lived. It follows therefore that appellee, in entering upon the land and holding it and the houses and machinery in controversy under his contract with Davis and his deed from Darter, was not a trespasser. The contract with Davis gave appellee title to the machinery, etc., mentioned therein, provided these were not attached to the land in such manner as to become realty. The deed from Darter to appellee gave him color of title to the land and the right to possess and use same for the purposes therein mentioned so long as Darter lived.

To justify appellee in removing the house, gin, machinery, etc., from the land it was not necessary for him to show a technical color of title to the freehold. That would only be essential where appellee was seeking pay from the owner of the freehold for the improvements. It is sufficient to sustain the judgment appealed from if appellee has shown that he was not a trespasser in going upon the land, and that the house, gin, machinery, etc., in controversy were not annexed to the soil in such manner as to become immovable fixtures. The testimony of Berry Field, aside from the deed from Darter and the contract with Davis, shows that appellee was not a trespasser in going upon the land and in placing the machinery, etc., thereon. It is clear from the uncontradicted evidence in the record that appellee made the improvements and put the

machinery, etc., on the land in good faith.   The only other question then is, were these improvements, machinery, etc., fixtures?   While there is no precise definition of a "trade fixture," the articles in controversy, under the undisputed evidence, fall clearly within the designation of a "trade fixture," as that term is used by the authorities in describing property that has been annexed to the freehold for the purpose of carrying on a trade. Trade fixtures "are articles erected or annexed to the realty by the tenant for the purpose of carrying on a trade, and are removable by him during his term, provided the removal does not affect the essential characteristics of the article removed or reduce it to mass of crude materials."   13 Am. & Eng. Enc. L. (2 ed), p. 642, and cases cited in note; *Van Ness* v. *Pacard*, 2 Pet. 137.   "Besides being removable on the grounds of public policy, trade fixtures are also removable because, from the nature of the tenure, they are not presumed to have been annexed with the intention of making them permanent additions to the realty."   19 Cyc. 1065b.

Now, here was property devoted to the business of ginning and milling.   Such parts of it as were annexed to the soil were so constructed that they could, "if it became necessary, be put on rollers and taken away."   It was all assessed as personal property, and the evidence shows that it was not the intention of the party who placed it there, nor of the owner of the soil on which it was placed, to have it annexed permanently to the freehold.   The intention of the party erecting the structure and placing the machinery in cases of this kind will generally control.   *Markle* v. *Stuckhouse*, 65 Ark. 23; *Bemis* v. *First National Bank*, 63 Ark. 628, and cases there cited.

It follows from what we have said that there could not have been any prejudicial error in the rulings of the court in the giving of instructions.   The judgment was right upon the undisputed evidence, and it is therefore affirmed.