<hr />

### TRIUMPH ELECTRIC CO. v. PATTERSON (two cases).

### In re W. O. CRAIG MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. January 7, 1914.)

Nos. 3941, 3973.

1. BANKRUPTCY (§ 449*)—REVIEW—NATURE AND FORM OF REMEDY.

Where, in a bankruptcy proceeding before the adjudication, a real es- tate mortgagee claimed certain machinery, and a vendor of the machinery filed an intervening petition which the court, after a hearing, dismissed,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the proper mode of review was by appeal, and a writ of error will be dismissed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 449.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. FIXTURES (§ 1*)—REQUISITES OF CONVERSION INTO REALTY.

Whether an article is a chattel or an irremovable fixture depends upon real or constructive annexation to the realty, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected, and the intention of the party, making the annexation, to make it a permanent accession to the freehold which may be inferred from the nature of the article, his relation and situation, the policy of the law, the structure and mode of the annexation, and the purpose and use for which it is made.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 1, 6; Dec. Dig. § 1.*]

3. FIXTURES (§ 5*)—MACHINERY IN MANUFACTURING PLANT.

Machinery for an ice manufacturing plant installed in a building especially built and adapted to receive it and intended exclusively for the manufacture of ice, on a piece of land put to no other purpose, which machinery was essential to the business of the plant and was installed for permanent use, was an irremovable fixture and not a chattel, under the Arkansas law.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 4; Dec. Dig. § 5.*]

4. COURTS (§ 363*)—APPLICATION OF LOCAL LAWS—PROPERTY RIGHTS—LAW GOVERNING.

Whether a reservation of title to machinery by a vendor preserved its character as personalty, as against a subsequent mortgagee of land to which it was attached, was to be determined by the law of the state in which the land was situated.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 363.*]

5. COURTS (§ 366*) — UNITED STATES COURTS — AUTHORITY OF DECISIONS OF STATE COURT.

The local law of a state is to be ascertained, if possible, from the decisions of its courts of last resort, but otherwise the United States courts will form an independent opinion and decision upon the principles and doctrines of general jurisprudence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

6. SALES (§ 472*)—CONDITIONAL SALES—OPERATION AND EFFECT AS TO THIRD PERSONS.

Under the law of Arkansas, a vendor of property clearly personal may retain title until the purchase price is paid as against a subsequent purchaser or lienholder without regard to notice.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1366–1376; Dec. Dig. § 472.*]

7. BANKRUPTCY (§ 155*)—PROPERTY—CONTROVERSIES BETWEEN CLAIMANTS.

The amendment of June 25, 1910 (chapter 412, § 8, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1500]) to the Bankruptcy Act of July 1, 1898, c. 541, § 47, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), giving trustees

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, had no application to a controversy in a bankruptcy proceeding between a conditional vendor of machinery and a subsequent mortgagee of the land to which it was attached, and the trustee derived no rights, remedies, nor powers from any source which could add anything to the mortgagee's rights under the mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

8. FIXTURES (§ 18*)—BETWEEN MORTGAGOR AND MORTGAGEE.

As a general rule, the lien of a mortgage of realty embraces everything so annexed to the land as to become, in contemplation of law, part and parcel thereof, including not only buildings and structures, but also machinery forming an integral part thereof and designed, adapted, and intended for permanent use therein, although susceptible of removal and installation elsewhere, and although other similar machinery might be substituted therefor.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 32–46; Dec. Dig. § 18.*]

9. FIXTURES (§ 27*)—AS BETWEEN MORTGAGEE OF LAND AND VENDOR OF CHATTELS.

Under the Arkansas law which is in harmony with that generally prevailing, a reservation of title in a contract of sale of machinery attached to realty with the knowledge and consent of the vendor, which contract was not required by statute to be, and was not, recorded, did not prevent such machinery passing as realty to a subsequent mortgagee without notice, especially as the rule that fixtures pass with the land and inure to the benefit of mortgagees against secret liens and reservations of title is more strictly adhered to in those states where, as in Arkansas, a mortgage passes the legal title.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 5, 22, 25, 44, 45, 54; Dec. Dig. § 27.*]

Appeal from and in Error to the District Court of the United States for the Western District of Arkansas; F. A. Youmans, Judge.

Bankruptcy proceeding against the W. O. Craig Manufacturing Company, in which J. O. Patterson claimed certain property, and the Triumph Electric Company filed its intervening petition, claiming the same property. From a decree (201 Fed. 548) dismissing the petition of intervener, it appeals and brings error. Writ of error dismissed, and decree affirmed on appeal.

John I. Worthington, of Harrison, Ark., and Joseph M. Hill, James Brizzolara, and Henry L. Fitzhugh, all of Ft. Smith, Ark., for appellant.

E. H. Gamble and James F. Read, both of Ft. Smith, Ark., for appellee.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. The W. O. Craig Manufacturing Company, a corporation, was adjudicated a bankrupt on the 27th of July, 1912. This concern was formerly the Siloam Springs Cold Storage & Ice Company, and under the latter name the bankrupt bought from the Triumph Electric Company certain machinery for an ice manufacturing plant at Siloam Springs, Ark. This machinery consisted in general of five sections of double-pipe ammonia condenser

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

complete, hand hoist and crane, with can filler and hose; also, a 28-ton ice tank 25 feet wide, 43 feet and 10 inches long, and 47 inches deep, made of ¼-inch steel; a 28-ton shell type brine cooler; 380 ice cans; 18-inch propellor; one 3½ horse power motor; a traveling crane with hand hoisting attachments of a substantial construction; one automatic ice can dump of 300 pounds capacity; and various other articles appurtenant to this machinery and necessary for its installation. The machinery was sold under two contracts, dated respectively January 28 and February 25, 1911. The aggregate purchase price was $4,312.-80, for which notes were given. Of this the sum of $3,026.98 is alleged to be unpaid. The contract between the bankrupt and the vendor contained the following provisions:

"The title to all material furnished by the company shall remain in it until full purchase price has been paid in cash, with full right of repossession by the company upon purchaser's default of any act or payment due under this contract; and purchaser agrees that company shall have the right to retain all the moneys, that may have been paid by the purchaser, as liquidated damages for purchaser's default. Purchaser agrees to do all acts necessary to protect such retention of title in the company, and the taking of any security whatsoever shall not operate as a waiver nor as otherwise affecting this retention of title.

"The company, at its election, shall be entitled to a conveyance of said material by way of mortgage, in order to secure the payment of the purchase price.

"Should the purchaser become insolvent or default in the performance of or payment of any part of this contract, including any obligation given for any part of it or failure to execute notes as agreed upon, the whole purchase price shall forthwith become due."

This contract was one of conditional sale. Under the law of Arkansas it was not required to be recorded, and was not recorded. The machinery was installed not later than May, 1911, in a building constructed for that express purpose, on a piece of land adjacent to a railroad for convenience of shipping. This land was put to no other use. The building was especially built and adapted to receive the machinery; it was intended exclusively for the manufacture of ice; the apparatus purchased was essential to the business of the plant, and was installed for permanent use therein.

[1] June 3, 1911, to secure the repayment of a loan of $30,000, made on that date, the bankrupt executed to the Commerce Trust Company of Kansas City, Mo., a mortgage on its entire plant and all personal property used in connection therewith. This mortgage, and the notes secured thereby, were afterwards assigned to the objector Patterson. Before the adjudication in bankruptcy, Patterson, in the bankruptcy proceeding, claimed all the property described in the mortgage and sought to have the same sold and the proceeds applied to the payment of the mortgage debt. The Triumph Electric Company filed its intervening petition, claiming the machinery sold by it to the bankrupt by virtue of the retention of title in its contract of sale. To this petition Patterson filed answer asserting the superior lien of his mortgage. The property was by the referee ordered sold free from liens, and out of the proceeds of the sale an amount sufficient to pay the intervener's claim was retained by the trustee to await the decision on

the issues thus framed. Upon hearing the trial court found in favor of the objector and dismissed intervener's petition.

The case is here both upon writ of error and by appeal. Appeal being the appropriate remedy upon the record as presented, we take jurisdiction thus, and the writ of error is accordingly dismissed.

As stated by the trial judge, the real question in the case is whether the property in controversy became a part of the realty and passed under the mortgage, or remained personal property, subject to the terms of the contract between the bankrupt and the intervener. This question necessarily subdivides itself thus:

1. Is the property of such a character, and were the circumstances of its annexation such, that in the absence of the special reservation it would ordinarily become a part of the realty and pass under the mortgage?

2. If so, did that special reservation of title preserve its character as personal property, and withdraw it from the subsequent mortgage lien?

[2, 3] With respect to this first branch of the question involved, the court below, after considering the facts and rules laid down by the Supreme Court of Arkansas for determining whether a given article is a chattel or an irremovable fixture (Choate v. Kimball, 56 Ark. 55, 19 S. W. 108; Ozark v. Adams, 73 Ark. 232, 83 S. W. 920), found that this machinery was such a fixture and constituted an integral part of the realty. We agree with this conclusion. The rules referred to are the following:

"1. Real or constructive annexation of the article in question to the realty.

"2. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

"3. The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed; the relation and situation of the party making the annexation, and the policy of the law in relation thereto; structure and mode of the annexation and the purpose and use for which the annexation has been made."

Mr. Ewell, in his treatise on the Law of Fixtures (chapter 9, p. 293), after reciting the three tests quoted, says:

"The general course of decision is in favor of viewing everything as a fixture and as passing by a conveyance of the land, which has been attached to the realty with a view to the purpose for which it is employed or held, however slight or temporary the connection between them, provided, of course, that such attachment be intended as a permanent or habitual one, which in the absence of evidence to the contrary will in this relation ordinarily be presumed."

Mr. Jones states the rule as follows:

"The intention with which an article of personal property is attached to the realty, whether for temporary use or for permanent improvement, has within certain limits quite as much to do with the determination of the question, whether it has thereby become a permanent fixture, as has the way and manner in which it is attached. In the modern cases the intention with which a chattel is attached to the realty has become more and more the decisive test whether or not the chattel has become a part of the realty. The mode of annexation is of consequence chiefly as bearing upon the intention.

"The intention which controls is, 'not the secret design which may dwell in a party's mind, and as to whose existence he alone can speak, but that "in-

tention" which was either expressly declared by the parties competent to make it the governing rule, or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, and the visible consequences of their severance upon the proper and obvious use of it.'" Jones on Law of Real Property, vol. 2, §§ 1668, 1669.

The principles announced have received general recognition (William. Firth Co. et al. v. South Carolina Loan & Trust Co., 122 Fed. 569–578, 59 C. C. A. 73; Giddings et al. v. Freedley et al., 128 Fed. 355, 63 C. C. A. 85, 65 L. R. A. 327); and particularly in the decisions of this court (Hooven, Owens & Rentschler Co. v. John Featherstone's Sons et al., 111 Fed. 81–83, 49 C. C. A. 229; Armstrong Cork Co. v. Merchants' Refrigerating Co. et al., 184 Fed. 199–201, 107 C. C. A. 93, 95). In the latter case Judge Sanborn said:

"The true test of the character of an improvement is the intent of the owner of the real estate to incorporate, or not to incorporate, it permanently in his realty as a part thereof."

The machinery in controversy was installed in such manner and under such circumstances as to satisfy all the tests prescribed for the de·termination of an irremovable fixture to land.

[4-7] We have next to consider whether the reservation of title in the contract of sale operated to preserve to this property its original character as personalty to such extent as to render the vendor's title superior to the lien of appellee's mortgage.

This case must, of course, be determined in accordance with the law of the state of Arkansas, if that can be ascertained with sufficient clearness from the decisions of its courts of last resort; otherwise, it will be our duty to form our independent opinion and decision upon the principles and doctrines of general jurisprudence. In all cases between vendor and vendee, and, with respect to property clearly personal, against any subsequent purchaser or lienholder, without regard to notice, the title, under the laws of Arkansas, can be retained by the vendor until the purchase price is paid. Carroll v. Wiggins, 30 Ark. 402; Andrews v. Cox, 42 Ark. 473, 48 Am. Rep. 68; McIntosh & Beam v. Hill, 47 Ark. 363, 1 S. W. 680; McRea et al. v. Merrifield et al., 48 Ark. 160, 2 S. W. 780; Simpson v. Shackelford, 49 Ark. 63, 4 S. W. 165; Edgewood Distilling Co. v. Shannon, 60 Ark. 133, 29 S. W. 147; Triplett v. Mansur & Tebbetts Implement Co., 68 Ark. 230, 57 S. W. 261, 82 Am. St. Rep. 284; Cullin-McCurdy Const. Co. v. Vulcan Iron Works, 93 Ark. 342, 124 S. W. 1023; In re Lutz (D. C.) 197 Fed. 492. In that state it is not essential to the validity of such contracts of conditional sale that they be filed of record in any public registry; therefore all decisions which are founded upon the provisions of recording statutes are not pertinent here. As an incident to this consideration, the amendment to the Bankruptcy Act, approved June 25, 1910 (chapter 412, § 8, 36 Stat. 838 [U. S. Comp. St. Supp. 1911, p. 1500]), which clothes trustees with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, has no application. The mortgagee here derives whatever rights he has from the instrument under which he claims. The contract of conditional sale is in-

herently valid unless the mortgage lien is superior to it. From no source has the trustee derived any rights, remedies, or powers which could add anything to what the mortgagee already enjoys and is asserting in his own right.

[8] The general rule is that the lien of a mortgage of realty embraces whatever is annexed to the land in such manner as to become, in contemplation of law, part and parcel thereof. This includes not alone buildings and structures, but likewise machinery which forms an integral part of the same, and is designed, adapted, and intended for permanent use therein, with a view to the purpose for which they are employed. This is true in the absence of special local custom to the contrary, although such machinery may be susceptible of removal and installation elsewhere, and although in the structure other similar machinery might be substituted for it. It would be impracticable, and perhaps unprofitable within the compass of this opinion to recite all the modifications of this rule that are recognized under varying conditions and in various jurisdictions. It will be sufficient to call attention to such as are deemed to be pertinent to this inquiry.

[9] Against a prior mortgage, an agreement between the owner of the land and his vendor that articles annexed to the freehold shall remain chattels until paid for has been upheld chiefly upon the ground that the mortgagee has parted with nothing upon the faith of the annexation, and that therefore the vendor has the stronger equity. This is true, generally, where the mortgagee has notice, actual or constructive, of the agreement, and where the chattels may be removed without injury to the freehold. In the case of a subsequent mortgage, for a present valuable consideration, the rule is otherwise. Such mortgagee parts with his property upon the faith of the apparent security. Generally, however, if he have notice, actual or constructive, of the reserved personal character of what otherwise would be a fixture passing with the land, he must be bound thereby, because he dealt with knowledge of the situation. The rule that fixtures pass with the land, and inure to the benefit of mortgagees against secret liens and title reservations, is more strictly adhered to in states where the legal title to land is vested in the mortgagee. Jones on Real Property, vol. 2, par. 1744. Such is the estate recognized in Arkansas. Whittington v. Flint, 43 Ark. 504–519, 51 Am. Rep. 572; Perry County Bank v. Rankin, 73 Ark. 589, 84 S. W. 725, 86 S. W. 279. The following are among the many authorities which announce in their various phases the foregoing principles: Jones on the Law of Real Property, vol. 2, pars. 1668, 1669, 1680–1733, 1734, 1744, 1748, 1755; Bronson on Fixtures (1904) pp. 75, 98, 99, 147, and 154 to 162; Wickes Bros. v. Hill, 115 Mich. 333, 73 N. W. 375–376; Watson et al. v. Alberts et al., 120 Mich. 508, 79 N. W. 1048; Campbell et al. v. Roddy et al., 44 N. J. Eq. 244, 14 Atl. 279–282, 6 Am. St. Rep. 889; Ridgeway Stove Co. v. Way, 141 Mass. 557–560;[1] William Firth Co. v. South Carolina Loan & Trust Co. (C. C. A.) 122 Fed. 569–578, 59 C. C. A. 73; Phœnix Iron-Works Co. v. N. Y. Security & Trust Co. (C. C. A.) 83 Fed. 757, 28 C. C. A. 76; Evans v. Kister (C. C. A.) 92 Fed. 836, 837, 35 C. C. A. 28; In re Sunflower State Refining Co. (C. C. A.) 195 Fed. 180, 115 C. C. A. 132.

[1] 6 N. E. 714.

The case last cited, which was decided by this court, arose in the state of Kansas, where it is provided that all instruments evidencing the conditional sale of personal property shall be void as against innocent purchasers or creditors of the vendee unless deposited in the office of the register of deeds, and entered as a chattel mortgage. In that case the real estate mortgage was taken prior to the conditional sale. It contained an after-acquired property clause, which, under the law of the state, was ineffective as a chattel mortgage upon after-acquired property. The conditional sale contract had been recorded, as required by law. Under such circumstances it was held that this positive provision of the law of Kansas recognized and preserved the property described in the conditional sale as personal property both before and after it was placed upon the real estate. The record operated as notice to all parties in interest. Besides the mortgage was prior in date; it contained no after-acquired property clause effective as a chattel mortgage; and the mortgagee had parted with nothing on the faith of the annexation. Therefore, in the interest of justice, the claimant's lien was held to be superior; but the opinion carefully confined its ruling to the situation then before the court. It said:

"An examination of the authorities satisfies us that no general rule can be cited which can be applied to the decision of all cases similar to the one now under consideration. The correct decision of each case as it shall arise must depend upon the particular facts existing therein. * * *

"We think it may not be doubted that, in the absence of any agreement as between the vendor in a conditional sale of personal property and the bondholders or mortgagees under a mortgage having an after-acquired property clause, the true test for determining whether or not the lien of the conditional sale of the vendor is inferior to the lien of the mortgagee is whether the personal property has been so attached to the real estate mortgaged as to become a part of the realty. Whether the machinery sold to the bankrupt by the Carbondale Machine Company became real estate by its being placed upon the real estate described in the trust deed must be determined by the local law of Kansas, if any such law can be found."

It is conceded that appellee had neither actual nor constructive notice of the secret title reserved to appellant. His mortgage was taken subsequently to the annexation, and to secure a contemporaneous loan. As found by the trial court:

"Any man contemplating the purchase or the taking of a mortgage on the ice plant would have been warranted in assuming that the machinery was a part of the realty."

Unless, then, it is made to appear from the local decisions that a different rule of property has been announced in the state of Arkansas, it would seem that the decree below should be affirmed.

The first case in Arkansas which deals with this problem is Hensley v. Brodie, 16 Ark. 511. There a man named Woodruff sold to one Brodie certain machinery attached to a mill and delivered possession. Brodie exercised ownership and control over the property after the sale and removed part of it. Subsequently Woodruff entered into a written contract for the sale of the lot and mill house to the firm of Hoyt and Johnson; the title, however, remained in Woodruff, and the sale agreement contained a forfeiture clause. Woodruff specially reserved by parol the machinery in controversy as Brodie's property, and

Hoyt and Johnson so distinctly understood. There was evidence that Hoyt and Johnson were to pay Brodie a certain rental for the use of the machinery, which was left in the building. Subsequently, Hensley acquired the interest of Hoyt and Johnson, and agreed to pay to Brodie the same rent that Hoyt and Johnson were to pay him. Later Brodie brought replevin against Hensley for the property in question. Hensley pleaded property in himself by reason of attachment to the realty, and also that the machinery, forming a part of the realty, was not subject to replevin. It was held that though—

"The engine and apparatus, fitted up for the purpose of driving the mill, might have passed, on a sale of the premises by Woodruff, without reservation, to his vendee as fixtures (Sparks v. State Bank, 7 Blackf. [Ind.] 469), yet the sale of them by Woodruff to Brodie, the delivery of possession and control to him, and the subsequent exercise of ownership over them by him, established by the evidence, amounted clearly to such a severance of them, in law, from the realty, as to make them his personal property, and entitle him to bring replevin for them, against the defendant, who had recognized his title to them and offered to pay him rent for them, but afterwards refused to surrender them upon demand."

The opinion contains the following statement:

"The proof does not show that Hensley was an innocent purchaser, without notice, and if it did, the property being personalty, the rule caveat emptor applies."

But this conclusion must be read in connection with the announcement that the delivery of possession and control to Brodie, and the exercise of ownership by him, amounted to a severance, in law, from the realty; that Hensley had notice of the condition, was therefore not an innocent purchaser, and had recognized Brodie's title by offering to pay rent for the use. The court makes this further significant statement:

"We are not prepared to say, upon examination of authorities, that if this were a case arising between a vendor and purchaser of the premises, or an heir and executor, the machinery being fitted up for the purpose of running a mill upon the premises, it would not have belonged to and followed the soil. But it is clear that if the case arose between landlord and tenant—if Brodie, for instance, had leased the lot and mill house from Woodruff, and being the owner of the machinery, had fitted it up in the house for the purposes of trade—he would have had the right to remove it as personalty at the end of the term, and a conveyance by Woodruff of the premises during the lease would not have vested a right to the machinery in the vendee. (Citing cases.)

"The case at bar is not one arising between a landlord and tenant of the premises, but it is upon principle more analogous to that class of cases, than to the other classes of cases, in which the law in relation to fixtures is more rigid."

It will thus be seen that the Supreme Court of Arkansas, in this case, recognizes to the fullest the general principles to which we have adverted.

Choate v. Kimball, 56 Ark. 55, 19 S. W. 108, bases the right of removal of fixtures by the mortgagor, against the lien of a prior mortgage, upon the doctrine of implied notice of intention conveyed by a custom of the country of which the mortgagor had knowledge. It was held that this amounted to an implied agreement as effective as one expressed.

In Bemis v. First National Bank, 63 Ark. 625–630, 40 S. W. 127,. it is said that if in Choate v. Kimball, supra, there had been no proof·of custom amounting to notice and agreement for removal, 'the decision in that case must have been reversed.

In Monticello Bank v. Sweet, 64 Ark. 502, 503, 43 S. W. 500, 501, the rule is thus announced:

"Fixtures attached to the realty after the execution of a mortgage of it become a part of the mortgage security, if they are attached for the permanent improvement of the· estate, and not for a temporary purpose, or if they are such as are regarded as permanent in their nature. * * *

"The mortgage to the bank included the land and all permanent annexations thereto made either before or after its execution. Such being the effect of the mortgage contract between the bank and Courtney, no subsquent law could provide for the creation of a lien by the mortgagor to`a third party that would defeat the lien of the mortgagee, without destroying vested rights and impairing the obligation of contracts."

The decision in Markle v. Stackhouse, 65 Ark. 23, 44 S. W. 808, is consistent with the doctrine, repeatedly announced in Arkansas, that permanent annexations become a part of the realty, and pass with the · sale or mortgage of the soil. It says:

"A sawmill erected by a vendee on land subject to a vendor's lien becomes a fixture, and subject to such lien, where the manner of its annexation to the soil, and its adaptation to the use to which the soil is devoted, clearly establish that it was erected with the intention that it should be a permanent accession."

In Brannon v. Vaughan, 66 Ark. 87, 48 S. W. 909, it was held that the right to remove a building erected by a third person upon land conditionally sold, under an agreement with the vendee that the person erecting it should have the right to remove it, depends upon whether the vendor of the land had knowledge of such agreement and gave to it his express or implied assent. Such vendor manifestly stands in the same relation to the property as a prior mortgagee; and therefore with an equity inferior to that of a subsequent mortgagee who relied upon the fixture as forming part of the realty. In the former case, a condition to the right of removal is that no injury will result to the land. therefrom; but, in the case of a subsequent mortgagee, any removal of that which formed an apparent part of the realty is a manifest impairment of the security upon which he relied. The same principles are recognized in Kansas City Southern Railway Co. v. Anderson, 88 Ark. 129, 113 S. W. 1030, 16 Ann. Cas. 784, and in Peck-Hammond Co. v. Walnut Ridge School District, 93 Ark. 77, 123 S. W. 771. In the latter case the appellant sold to the contractor heating apparatus, under contract reserving title until the purchase price was paid. The apparatus was installed in the schoolhouse; recovery against the school district was denied. The court held that since the school board had no· knowledge of such condition, and the apparatus was installed in the building, and thus became a part of the structure, the reservation of title could not be enforced. The contract was not made with the owner of the land. But, as we have seen, a mortgagee, either prior or subsequent, is the owner of the land in this sense. Under the decisions· of Arkansas the title to this heating apparatus never passed to the contractor. None could be transferred by him until condition performed..

The rule of caveat emptor applied. Nevertheless, when the chattel was annexed to the realty, this rule, peculiar to personal property, gave way to that governing its newly acquired character.

There is nothing in Ozark v. Adams, 73 Ark. 227, 83 S. W. 920, which conflicts with the views uniformly expressed in that state. It is there said:

"This intention of permanency in the installation of the machinery is what fixes its character as irremovable fixture."

In that case the relation of lessor and lessee, rather than of vendor and vendee or mortgagor and mortgagee, was presented. Nevertheless, because of the nature of the annexation, and the continuing obligation imposed upon the tenant, the right to remove the machinery was denied. We conclude that the rule in Arkansas, in cases like that at bar, is in harmony with that prevailing generally elsewhere.

It will be observed that the conclusion here reached does not contravene the policy adopted in Arkansas respecting conditional sale contracts affecting property whose status as personalty is unquestioned. It applies to that which has been transmuted into realty, with the knowledge and consent of the vendor, the law which governs its changed condition. As has been said:

"To hold otherwise would contravene the policy of the law requiring conveyances of interests in real estate to be recorded, seriously endanger the rights of purchasers, afford opportunities for fraud, and introduce uncertainty and confusion into land titles." Bronson on Fixtures (1904) § 29b, p. 155.

Appellant might have protected itself by taking security of record, which would have imparted notice to subsequent purchasers and mortgagees. Having elected to rely upon its secret reservation of title, it cannot complain if it finds its claim postponed to that of one superior in equity.

It follows that the decree below must be affirmed, and it is so ordered.