**In re HOT SHOTS BURGERS & FRIES, INC., Debtor.**

**Bankruptcy No. 91–41298M.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Aug. 10, 1992.

Ron L. Goodman, Little Rock, Ark., for debtor.

M. Randy Rice, Trustee, Little Rock, Ark.

Charles W. Baker, Rose Law Firm, P.A., Little Rock, Ark., for Trustee.

H. Baker Kurrus, Little Rock, Ark., for University Plaza.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On May 28, 1991, Hot Shots Burgers & Fries, Inc. (debtor) filed a voluntary petition under the provisions of chapter 11 of the United States Bankruptcy Code. By order entered on July 15, 1991, the case was converted to a case under chapter 7, and M. Randy Rice, Esq., was appointed trustee.

On October 7, 1991, the trustee mailed a notice to all parties in interest of his intention to sell personal property of the estate free and clear of liens. University Plaza filed an objection to the trustee's notice to sell, and a hearing was held on October 31, 1991. The Court took the matter under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N), and the Court has jurisdiction to enter a final judgment in the case.

## BACKGROUND

On September 15, 1986, the debtor entered into a lease agreement with University Plaza for the purpose of leasing property to operate a fast-food restaurant. The leased property was located in a corner of the parking lot of the University Plaza Shopping Center in Little Rock, Arkansas.

After entering into a written lease agreement with University Plaza, the debtor con-

structed a 570 square foot building on the leased premises to be used as a drive-through fast-food restaurant. The building was constructed from three prefabricated modules that were transported to Little Rock, Arkansas, from Lebanon, Tennessee, on lowboy trailers. The modules were lifted by a crane and placed on a grade beam foundation. The foundation was two feet deep and was designed and constructed specifically to conform to the building's specifications. Weld plates were embedded in the top of the foundation, as well as in the bottom of the modules. After the modules were placed on the foundation, the plates were welded. The outside of the building was covered with a concrete-type material called "Dryvit," and fiberglass was poured on the top of the connected modules to form the roof of the building.

A concrete curb was formed around the outside of the building to meet city building code specifications. A ceramic tile border was affixed around the outside of the building for decorative purposes. The border is approximately three feet high, beginning at the ground and continuing up the sides of the building.

The utilities were provided to the building by pipes and cables that were placed on the premises before the grade beam foundation was built. The pipes and cables extend under the grade beam foundation into a dirt area in the center of the foundation. The utility connections were placed at specific locations pursuant to the schematic drawing of the building. There was a crawl space located on the north end of the building to enable utility connections to be made.

Edward A. Salazar, president of the debtor, testified that the original cost of the building was $57,500.00, which does not include the cost to assemble the building at a particular site. Mr. Salazar further testified that constructing a similar building on the premises without utilizing modular units would have reduced the cost of constructing the building. Another witness testified that a similar building could have been constructed on the premises for approximately $12,000.00.

If the building were removed from the leased premises, a cutting torch would be used to cut the weld plates loose. In addition, it would be necessary to cut the roof in two places and crack the Dryvit wall along the seam lines of the three modules. The inside of the building is constructed so that it can be taken apart without the necessity of cutting the ceiling or walls.

Once the building is removed, the concrete curb and grade beam foundation would remain. To restore the leased property to its original condition, the curb and grade beam foundation would have to be removed by jackhammering. The utilities, although permanent, could be removed from the premises or simply left underground and covered with pavement. A witness for the trustee testified that it would cost approximately $4,000.00 to remove the grade beam foundation and restore the leased premises to its original condition.

The debtor operated five other fast-food restaurants. Four of the five restaurants were operated from buildings similar to the building constructed in this case. At one time the debtor operated a fast-food restaurant in Forrest City, Arkansas, in a modular building similar to the building constructed at University Plaza Shopping Center. The debtor moved the Forrest City building to Bryant, Arkansas, for use as a fast-food restaurant in Bryant.

On October 7, 1991, the trustee mailed a notice to all creditors of his intention to sell personal property free and clear of liens, including "[e]quipment, appliances, inventories, supplies, *portable buildings*, fixtures, furnishings, [and] signs" (emphasis added). On October 10, 1991, University Plaza filed an objection to the trustee's sale of the property located at the University Plaza Shopping Center.

University Plaza argues that the building and all related improvements constructed on the leased premises have become so related to the real property as to become part of the real property. University Plaza basis its argument on the proposition that the building has been permanently attached to the real estate and removal of the building would injure the property.

The trustee argues that the building and all of its contents can be removed and sold without injury to the real property. The trustee also argues that, because the building is removable, the building and all of its contents are trade fixtures.

## DISCUSSION

### Fixtures

A building constructed on the land of another with the owner's consent, may remain the property of the person annexing the building if there is an understanding, either expressed or implied, that the building shall remain personalty, or there is an express reservation of a right to remove the building. *Hankins v. Luebker*, 224 Ark. 425, 274 S.W.2d 356, 358 (1955); *Milner v. New Edinburg School Dist.*, 211 Ark. 337, 200 S.W.2d 319, 321 (1947); *Vanhooser v. Gattis*, 139 Ark. 390, 214 S.W. 44, 46 (1919). When no understanding exists as to the right of removal of the building, a determination must be made as to whether the building has become a "fixture." A fixture is defined as property annexed to the freehold for use in connection therewith and so arranged that it cannot be removed without injury to the freehold. *Atkins Pickle Co. v. Burrough–Uerling–Brasuell Consulting Eng'rs, Inc.*, 271 Ark. 897, 611 S.W.2d 775, 778 (App.1981); *Continental Gin Co. v. Clement*, 176 Ark. 864, 4 S.W.2d 901, 902 (1928); *Choate v. Kimball*, 56 Ark. 55, 19 S.W. 108, 109 (1892).

Arkansas courts have adopted a three-part test to determine whether items are fixtures:

(1) whether the items are annexed to the realty;

(2) whether the items are appropriate and adapted to the use or purpose of that part of the realty to which the items are connected; and

(3) whether the party making the annexation intended to make it permanent.

*McIlroy Bank & Trust Fayetteville v. Federal Land Bank of St. Louis*, 266 Ark. 481, 585 S.W.2d 947, 948 (1979) (citing *Choate v. Kimball*, 56 Ark. 55, 19 S.W. 108 (1892)). The third part of the test, the intention of the party making the annexation, has been held to be the primary factor to rely on in making the determination. *Bank of Mulberry v. Hawkins*, 178 Ark. 504, 10 S.W.2d 898, 899 (1928); *Continental Gin Co. v. Clement*, 176 Ark. 864, 4 S.W.2d 901, 902 (1928); *Choate v. Kimball*, 19 S.W. at 109. The party's intention can be "inferred from the nature of the chattel, the relation and situation of the party making the annexation, the structure and mode of annexation and the purpose for which the annexation has been made." *Corning Bank v. Bank of Rector*, 265 Ark. 68, 576 S.W.2d 949, 952–53 (1979) (citing *Ozark v. Adams*, 73 Ark. 227, 83 S.W. 920 (1904)).

The determination of the party's intention should be made as of the time of the annexation. *McIlroy Bank & Trust Fayetteville v. Federal Land Bank of St. Louis*, 585 S.W.2d at 949. In *McIlroy Bank* the Court stated:

Whether or not the owner of the equipment, after attaching it to realty, subsequently decided to remove it is not the controlling factor. One might remove a porch from his residence although it was built for the purpose of serving the residence.... [T]here can be no question but that the ... porch was attached and became part of the realty.

*Id.* at 949.

In a landlord/tenant relationship, the question of whether property has become a fixture should be liberally construed in favor of the tenant. *Romich v. Kempner Bros. Realty Co.*, 192 Ark. 454, 92 S.W.2d 215, 216 (1936); *Stone v. Suckle*, 145 Ark. 387, 224 S.W. 735, 737 (1920). *Accord Barnes v. Jeffus*, 173 Ark. 100, 291 S.W. 990, 991 (1927). *See also Harding v. Concrete Structures, Inc. (In re Concrete Structures, Inc.)*, 9 B.R. 72 (Bankr.E.D.Va. 1981), in which the Court stated that:

[W]hen a landowner consents to the placing of a building on his land by another, without an express agreement as to whether it shall become a part of the realty or remain the property of the person placing it there, in the absence of any other facts and circumstances tend-

488

ing to show a different intention, an agreement will be implied that the building is to remain the property of the one placing it there.

9 B.R. at 74 (quoting *State v. Ancient Order of United Workmen,* 178 Kan. 69, 283 P.2d 461, 468 (1955)).

The testimony in the present case clearly establishes that the building was annexed to the realty and that the building was appropriate for and used for operating a fast-food restaurant. Therefore, in applying the three-part test to determine whether the building is a fixture, the first two tests have been met. Whether the third test, the intention of the party making the annexation, has been met is more difficult to determine.

The lease agreement entered into by the parties was not received into evidence, so the record is silent as to whether the rights of the parties as to the ownership of the building were expressly defined in the lease agreement. The debtor's testimony regarding his intentions at the time he annexed the building to the property at the University Plaza Shopping Center was as follows:

Q: Now when you constructed and were involved in setting that location up, did you intend to do business there for a more or less permanent period of time?

A: Yes.

Q: You didn't intend to set up just on a seasonal basis or a month-to-month basis, did you?

A: No.

Q: How long did you expect to do business there?

A: Well, at least five years.

Q: Did you intend to move the building around during that period?

A: It did come into mind, um-huh, about the third year.

Q: You did—you thought about moving the building?

A: Absolutely.

Q: But you didn't when you set it up, did you?

A: Well, we specifically bought—designed and bought a modular building so it could be moved.

Q: My question—I think you answered it earlier—was when you set it up you intended to be there about at least five years I think was your testimony.

A: Um-huh.

Record at 27–28. No evidence was presented by University Plaza to dispute the debtor's testimony.

The evidence does not support a finding that the building was constructed on a permanent basis. The debtor testified that he used modular construction to enable him to move the buildings to different locations if necessary. The debtor previously moved a similar building from Forrest City to Bryant, Arkansas. The debtor uses buildings similar to the building in this case at four of his five fast-food restaurant locations.

The building constructed on the University Plaza Shopping Center was constructed using three modular building portions that were transported from Tennessee to the leased premises. The building was attached to the foundation using weld plates and can be separated by using a cutting torch. The foundation was only two foot high and was constructed above the ground. The utilities were provided to the premises by pipes and cables that extend under the grade beam foundation and can be removed or "capped" upon relocation. Although the grade beam foundation and curb would need to be jackhammered after removable of the building, the cost of such reconstructive work is relatively insubstantial.

The debtor's testimony regarding his intention to construct a removable building was corroborated by the evidence regarding the cost of the modular building. The modular building's cost was at least $45,000.00 more than the cost would have been if the debtor had constructed a similar building using traditional construction techniques. The debtor's testimony is also corroborated by the fact that it would be unreasonable for the debtor to pay so much more for a modular building if he intended

the building to be a permanent fixture on someone else's property. In addition, if the building remains part of the realty, the result would be an unconscionable windfall for University Plaza. Under the facts in this case, the third test has not been met; therefore, the building is not a permanent fixture and not part of the real estate.

### Trade Fixtures

 The trustee also argues that, because the building is removable and was constructed by the debtor for the purpose of carrying on his restaurant operations, the building and all of its contents are trade fixtures, which the trustee may remove and sell.

■ The Arkansas Supreme Court explained the rule to be applied to trade fixtures as follows:

> trade fixtures are articles erected or annexed to realty by a tenant for the purpose of carrying on a trade, and removable by him during his term (provided the removal does not affect the essential characteristics of the article removed or reduce it to a mass of crude materials) upon grounds of public policy and because, from the nature of the tenure, they are not presumed to have been annexed with the intention of making them permanent additions to the realty.

*Barron v. Barron*, 1 Ark.App. 323, 615 S.W.2d 394, 396–97 (1981) (quoting *Corning Bank v. Bank of Rector*, 265 Ark. 68, 576 S.W.2d 949, 954 (1979)). *Accord Barnes v. Jeffus*, 173 Ark. 100, 291 S.W. 990, 991 (1927); *Field v. Morris*, 95 Ark. 268, 129 S.W. 543, 545 (1910). The intention of the party making the annexation will generally control. *Field v. Morris*, 129 S.W. at 545. Courts applying Arkansas law have uniformly allowed trade fixtures to be removed from real property. *Bennett v. Taylor*, 185 Ark. 794, 49 S.W.2d 608 (1932); *Bank of Mulberry v. Hawkins*, 178 Ark. 504, 10 S.W.2d 898 (1928); *Field v. Morris*, 95 Ark. 268, 129 S.W. 543 (1910).

In this case, the debtor annexed the building on the real property for the sole purpose of operating his fast-food restaurant business. In addition, as previously

determined, the building was not annexed with the intention of making the building a permanent addition to the realty. Therefore, under Arkansas law, the building also constitutes a trade fixture and remains personal property.

### CONCLUSION

For the reasons stated above, the building and its contents annexed to the University Plaza Shopping Center by the debtor are found to be removable trade fixtures, which are personal property of the debtor that the trustee may sell. Therefore, University Plaza's objection to the trustee's sale is overruled.

IT IS SO ORDERED.