## STONE v. SUCKLE.

Opinion delivered October 18, 1920.

1. FIXTURES—AS BETWEEN VENDOR AND PURCHASER.—The strict rule against the right to consider as a personal chattel anything which has been affixed to the freehold applies between vendor and purchaser.

2. FIXTURES—RULE FOR DETERMINING.—It is not necessary to impose upon a chattel the character of a fixture as between vendor and purchaser that it be so affixed to the realty that it can not be removed without physical injury thereto, if it has been attached with a view of enhancing the value of the realty and for the purpose of being permanently used in connection therewith, or if it is essential for the purposes for which the building to which it is attached is used.

3.  FIXTURES—TIME OF PURCHASING.—In a vendor's action to recover
    electric fans claimed by the purchaser as fixtures, it was im-
    material that the vendor bought and attached them before he
    owned the realty, if they were installed before the sale, nor did
    the vendor's advice to his tenants that they were his personal
    property charge the subsequent purchaser with notice of such
    claim.

4.  FIXTURES—ELECTRIC FANS.—Where a deed to a hotel did not re-
    serve ceiling fans installed therein, which were necessary and
    adapted to the use of the property for hotel purposes, it was a
    question for the jury whether they were so attached to the elec-
    tric wiring of the house as to become a part of it, and to pass
    with a deed to the realty.

5.  APPEAL AND ERROR—HARMLESS ERROR.—Appellant can not com-
    plain of instructions submitting the case more favorably to him
    than he was entitled to under the law.

6.  TRIAL—REPETITION OF INSTRUCTIONS.—It was not error to refuse
    requests for instructions on matters already covered by other
    instructions.

Appeal from Nevada Circuit Court; *Geo. R. Haynie,*
Judge; affirmed.

### STATEMENT OF FACTS.

This is a suit in replevin brought by J. B. Stone
against L. Suckle and W. C. Colvin to recover several
ceiling fans. The facts are as follows:

J. B. Stone was a stockholder in a corporation which
owned a hotel in Prescott, Arkansas. It leased the hotel
to a tenant who furnished her own furniture and fixtures.
J. B. Stone began to board at the hotel, and for the com-
fort of himself and fellow guests he bought and installed
seven ceiling fans in the hotel. The fans were installed
in the parlor, dining room and lobby of the hotel. The
manner of their installation is as follows: the hotel
had been wired for electric lights and the lights were
taken off at certain places for the purpose of installing
these seven fans. The fans hung on hooks which were
screwed in the joists. The screw hooks were insulated
and the electric wires which came down through the ceil-
ing were wrapped around the electric wires attached to
the ceiling fans, and in this way the connections were

made: An ornament was placed where the two wires were wrapped together, so as to conceal this fact.

Subsequently, J. B. Stone became the owner of a majority of the stock in the corporation which owned the hotel. Then he acquired title to the hotel, and the corporation was dissolved. In September, 1917, Stone leased the hotel to W. C. Colvin for five years, and Colvin was to furnish the furniture and fixtures suitable for operating the hotel. Stone agreed to let him have the seven ceiling fans involved in this suit, until he should call for them. In December, 1918, Stone conveyed by deed the hotel property to Lewis Suckle and at the same time assigned to Suckle the five-year lease which Colvin had executed to him for the hotel property. Stone testified that he never intended that the ceiling fans should become fixtures in the hotel and did not intend to sell them to Suckle at the time he sold him the hotel property. The ceiling fans had electric lights attached to them which could be used in connection with the fans for the purpose of lighting the hotel lobby, dining room and parlor.

According to the testimony of Suckle, he thought that the seven ceiling fans were fixtures and were sold to him with the hotel. Stone never said anything to him about reserving the fans from the sale. Other evidence tended to show that ceiling fans were used in hotels in Prescott and the surrounding country, and that they were useful and well adapted to serve the comfort of the guests.

The jury returned a verdict for the defendant, Suckle, and the plaintiff has appealed.

*J. O. A. Bush,* for appellant.

This case is controlled by 56 Ark. 55-58 and 73 *Id.* 232-4. Stone bought and paid for the fans, and they were not fixtures.

*McRae & Tompkins,* for appellee.

Were the fans fixtures? This was a question of fact, and the jury, under correct instructions, have found the

issue for appellee, and that is conclusive. 179 S. W. 343; 41 Am. Rep. 255; 26 Gratt. 752; 32 *Id.* 735; 123 Mass. 47. The law as to the fixtures is well settled. See cases *supra;* 48 Atl. 1033; 84 Am. St. 862; 19 Am. Dec. 201.

HART, J. (after stating the facts). It is earnestly insisted by counsel for the plaintiff that the court erred in giving at the request of the defendant instruction No. 1, which reads as follows: "As between vendor and vendee, when no reservations are made, you are told that a clear warranty deed passes all the property attached and necessary, essential and adapted to the use of the property so sold will pass by the deed, and the vendor will not be heard to claim it afterward. So in this case it is undisputed that Stone conveyed the hotel property without reservation, and that he owned at the time both the hotel property and the fans; and if you find from the evidence that the fans were adapted to the use of the hotel and were such as are usually used in hotels of the class, and were necessary and essential to its use as a hotel, and you believe that his acts and conduct are inconsistent with a claim that the fans did not pass by his sale, you may find for the defendant, although you might further find that Stone claims that he never intended to permit the fans to become part of the hotel property."

The question respecting the right to what are called fixtures arise between three classes of persons:

1. Between heir and executor; and there the rule obtains the most rigor in favor of the inheritance, and against the right to consider as a personal chattel anything which has been affixed to the freehold.

2. Between the executor of the tenant for life, and the remainderman or reversioner; and here the right to fixtures is considered more favorably for the executors.

3. Between landlord and tenant; and here the claim to have articles considered as personal property is received with the greatest latitude and indulgence.

4. There is an exception of a broader extent in respect to fixtures erected for the purposes of trade, and the

origin of it may be traced back to the dawnings of modern art and science.

The strict rule as to fixtures that applies between heir and executor applies equally between vendor and vendee, and mortgagor and mortgagee. 2 Kent's Commentaries (14 ed.), p. 346.

In the case of *Canning* v. *Owen,* 22 R. I. 624, 48 Atl. 1033, 84 Am. St. Rep. 858, the court held that whatever is once annexed to the freehold by its owner, to be used and enjoyed in connection therewith, becomes a part of the realty, and passes by a conveyance thereof.

The court held further (quoting from syllabus) : "It is not necessary to impose upon a chattel the character of a fixture that it be so affixed to the realty that it can not be removed without physical injury thereto, if it has been attached with a view of enhancing the value of the realty and for the purpose of being permanently used in connection therewith. The intention of the owner need not be expressed in words, but must ordinarily be inferred from the nature of the articles affixed, the relation and situation of the parties interested, the policy of the law with respect thereto, the mode of annexation and the purpose for which it was made. The question whether chattels are to be regarded as fixtures depends less upon the measure of their annexation than upon their own nature, and their adaptation to the purpose for which they are used."

In the application of the rule the court held that electric light fixtures which take the place and serve the purpose of ordinary gas fixtures, though they may be removed without physical injury to the freehold, must, as between mortgagor and mortgagee, be regarded as part of the realty which the former has no right to detach and remove after a sale has been made under the mortgage.

This conclusion was reached by the court after a thorough review and discussion of all the leading cases on both sides of the question which had been decided up

to that time. In *Johnson* v. *Wiseman,* 4 Met. (Ky.), 357, 83 Am. Dec. 475, the court held that chandeliers and gas fixtures passed by the sale of the house in question. Speaking of the fixtures, the court said: "Purchasers and strangers, seeing them in their appropriate places, and no objections made to the sale, would regard them as part of the freehold, and would bid for the property with the belief that the acquisition of it would confer upon them the right to these articles, which, from their nature and position, seemed to be incident to and a part thereof, and thereby be induced to bid more than they would otherwise have done."

In *Pratt* v. *Whittier,* 58 Cal. 126, the court held (quoting from syllabus): "As between vendor and vendee, the rule for determining what is a fixture is always construed strongly against the seller; and whatever is essential for the purposes for which the building is used will be considered as a fixture, although the connection between them may be such that it may be severed without physical or lasting injury to either. In fact, whatever the vendor has annexed to a building for the more convenient use and improvement of the premises passes by his deed."

We think the better opinion as well as the better reasoning is to hold in accordance with the opinions in the Rhode Island, California and Kentucky cases cited and quoted from above. This holding is in accord with our previous decisions. *Thompson & Co.* v. *Lewis,* 120 Ark. 252.

Much importance is attempted to be placed by counsel for the plaintiff on the fact that he purchased the ceiling fans before he became the owner of the hotel property, and that he did not intend for them to become a part of the hotel property. We do not regard this as an important element in the case. The fact that Stone advised the tenants that the ceiling fans were his personal property could not impair the validity of his deed to the hotel property subsequently executed to Suckle. The real question was whether the ceiling fans purchased by

Stone were placed in the hotel so as to become a part of it and thus become fixtures. If so, they were a part of the realty and passed to the grantee with the conveyance of the hotel property. When Stone purchased the hotel property, the ceiling fans had already been installed and the title to both them and the hotel property became merged in Stone. The question is whether they were so attached and so well adapted to the use of the hotel that they become a part of the realty. It must be admitted that, if they had been attached by merely screwing them into the electric fixtures so that they could have been detached by any one unscrewing them, they should be considered personalty as a matter of law. Such, however, is not the case. The hotel was wired for the use of electricity, and it will be readily conceded that such wiring became a part of the realty. The wires attached to the ceiling fans were wrapped around these wires so that they were fastened to each other. An ornamental fitting was placed over the wires so as to conceal the places where they were wrapped together.

According to the testimony of Suckle, no reservation of the ceiling fans was made by Stone when he made the sale of the hotel property. According to the undisputed evidence, the fans were necessary and adapted to the use of the property for hotel purposes. Hence it was a question for the jury whether or not the ceiling fans were so attached to the electric wiring of the house as to become a part of it and pass with a deed to the realty, and we do not think the court erred in giving this instruction.

The plaintiff's theory of the case was submitted to the jury in an instruction which was more favorable to him than he was entitled to under the principles of law announced above. The instruction we refer to is as follows: "The undisputed evidence in this case shows that the plaintiff purchased the fans in controversy at his own expense before he acquired the full title to the hotel, and you are instructed that if you find from a preponderance of the evidence that the plaintiff never intended to part

with the title to the said fans, or that they should become a permanent fixture to the hotel property, but that they should remain his personal property and subject to his orders, and that his conduct was not inconsistent with his intention, then your verdict will be for the plaintiff.''

Counsel for plaintiff assigns as error the action of the court in refusing other instructions. We do not deem it necessary to set them out. The matters embraced in them were either embodied in instruction No. 4, just quoted, or they were contrary to the principles of law declared in this opinion.

It follows that the judgment will be affirmed.