JOHN J. MCHALE *vs.* THEODORE ROSENBLATT.

APRIL 3, 1936.

PRESENT:   Moss, Capotosto, Baker, and Condon, JJ.

122

Moss, J. This is a suit in equity brought by one who had been the mortgagee of certain property, including a parcel of land and a moving-picture theatre thereon, and who at the beginning of the suit was the owner of this property, by purchase at a foreclosure sale under his mortgage. The respondent claimed to be the owner, and as such entitled to the possession, of certain articles in the nature of furnishings, equipment or fixtures, which were then and are now in the theatre. These had been installed by a corporation which, at the time of the installation, owned the articles and was in possession of the theatre as lessee under a lease for ten years from the mortgagor, executed after the making of the mortgage. Any title which the lessee had to these articles after they were installed in the theatre was conveyed to the respondent. The complainant claimed that the ownership of them all had passed to him at the foreclosure sale as a part of the theatre. He also claimed the benefit of a later release to him from the mortgagor of "all claims for and to the entire equipment" of the theatre. The principal relief prayed for in the complainant's bill was an injunction to prevent the respondent

from taking possession of and removing any of these articles, by replevin proceedings or otherwise.

Not long after the suit was instituted, the McHale Realty Co., a corporation, to which the complainant had conveyed the theatre property, was, on his motion and with the written consent of the respondent's counsel, added as a party complainant. The cause was heard in the superior court upon bill, answer, replication and evidence. Among the facts proved, besides the facts above stated, was that the above-mentioned lease by the mortgagor covered the land and building, "together with all furniture, furnishings, equipment and fixtures contained in and forming part of the building," and contained a covenant by the lessee "to surrender the premises to the Lessor at the expiration of the term and lease in as good condition as when received, (including improvements of furnishings thereon and excluding equipment), ordinary wear and tear excepted."

After the hearing in the superior court a decision was entered, finding that the furnishings and equipment in question were replacements by the lessee of others already installed by the mortgagor and covered by the mortgage, so that, if the respondent were allowed to remove them, "the mortgagee would be deprived of some of the original security of the mortgage and the theatre would be left stripped and useless for the purpose for which it was designed unless new equipment and furnishings were installed." It was held that therefore it would be unfair to the complainants to permit the respondent to remove the articles in question.

Thereafter a decree was entered that the prayers of the bill be granted and that the respondent, his agents, servants and attorneys and any person claiming by, through or under the above-mentioned lessee, be enjoined from removing from the theatre building any of the articles in question or any personal property or fixtures therein and from prosecuting any action for their removal. The case is now before us on the respondent's appeal from this decree.

To dispose of a minor matter first, we can see no reason why the injunction should run against any person claiming the articles or any of them by, through or under the lessee, since it was never made a party to the suit.

The respondent contends that the suit could not be maintained after the original complainant had conveyed the theatre property to a corporation. But in view of the fact that this corporation was, by order of the superior court and with the respondent's consent, added as a party complainant before the case was heard on its merits, we can see no good reason for sustaining this contention.

Before the above-mentioned lease was made, the mortgagor had completely equipped and furnished the theatre for use as such and it had been so used up to the time when the lessee took possession under the lease, which contained an option of purchase. The lessee then proceeded to put in and install the new furnishings and equipment which are now in dispute, most of them, at least, being put in as replacements. The theatre was then used as such by the lessee and by an assignee of the leasehold interest, up to the time of the foreclosure, nearly two years. Thereafter, the mortgagor, as already stated, released all his interest in the "entire equipment" of the theatre to the original complainant. In view of the obvious intent of this release, it is our opinion that the word "equipment," as there used, should be construed to include the furnishings which had been installed to fit the theatre for its use as such, as well as articles perhaps more properly called "equipment." Meantime whatever interest the lessee had in the things now in dispute had passed to the respondent. Therefore, at the institution of the suit, the issue was solely between the complainant's claim to the disputed property, as successor to his interest as mortgagee at the time of the foreclosure and to the interest then of the mortgagor, and the respondent's claim, as successor to the interest of the lessee.

In the first place it is clear to us that all of the equipment and furnishings that were in the theatre at the time of the

making of the lease and were replaced by the lessee with other equipment and furnishings were subject to the mortgage, no matter how easily they could be removed. This is so because they had been put in and installed by the mortgagor, as owner of them and of the property, to fit the theatre for use as such and to form a permanent part of it. *Canning* v. *Owen*, 22 R. I. 624. In that case the question at issue was as to electric light fixtures, so-called, which had been installed in a house by the owner of it after she had made a mortgage on it, and the question arose between her and the purchaser at a foreclosure sale. It was decided in favor of the purchaser and in the opinion, at pages 628 and 629, this court says: "We think the correct rule of law in such cases is the common law rule, *viz.:* That whatever is once annexed to the freehold which is designed by the owner thereof to be used and enjoyed in connection therewith becomes a part of the realty and passes with the conveyance thereof. *Groeme* v. *Cullen*, 23 Gratt. 290. And, although this rule does not obtain, as between landlord and tenant, in relation to articles attached to the freehold for ornamental or domestic use, and also with regard to trade fixtures, so-called, yet that it does obtain and should be strictly enforced as between vendor and vendee. It is doubtless true that, as a general thing, a tenant may remove whatever he has added to the realty when he can do so without injury to the freehold, 'unless,' as said by FIELD, J., in *Sands* v. *Pfeiffer*, 10 Cal. 264, 'it has become by its manner of addition an integral part of the original premises. But not so a vendor. As against him all fixtures pass to his vendee, even though erected for the purposes of trade and manufacture, or for ornament or domestic use, unless specially reserved in the conveyance.' And the same strict rule which applies between heir and executor applies equally between vendor and vendee and between mortgagor and mortgagee. 2 Kent's Com. 411-413. . . . In other words, the question whether chattels are to be regarded as fixtures depends less upon the manner of their annexation to the freehold than upon their own nature

and their adaptation to the purposes for which they are used."

The rule laid down in that case was followed and a part of the opinion was quoted in *Stone* v. *Suckle*, 145 Ark. 387, 224 S. W. 735, in which it was held that electric fans, installed in the ceiling of hotel rooms, passed as fixtures with a deed of the hotel to a purchaser, because they were attached to the building to make it better adapted for use as a hotel, even though they were merely hung on hooks screwed into the ceiling and were connected with wires coming down through the ceiling. In *Filley* v. *Christopher*, 39 Wash. 22, 80 Pac. 834, the same rule was applied, with the same result, to the drop curtains and scenery in a theatre, the appliances for raising and lowering them, and the electric switchboard. So also in the similar case of *Oliver* v. *Lansing*, 59 Neb. 219, 228, 80 N. W. 29. There the court says: "The court was warranted in finding that the stage appointments, such as scenery, etc., were fixtures, there being evidence to the effect that they had been built and fitted specially for this building, and, so far as their nature permitted, had been affixed to the realty."

Though the question in *Canning* v. *Owen, supra*, was between a *bona fide* purchaser at a foreclosure sale and the mortgagor, who had installed the articles in question after making the mortgage, the reasoning therein is, in our judgment, applicable also to a case between the mortgagee and the mortgagor as to articles installed after the making of the mortgage. This conclusion is supported by a strong statement in *McCrillis* v. *Cole*, 25 R. I. 156. There this court, at page 161, cited, with evident approval, many cases in which courts of other states had held that, when a person sells a chattel under a condition that it shall remain the property of the seller until paid for, but it is of such a character that when it is put into a building it would pass under a mortgage of the real estate, and the seller had reason to suppose that it would be, and it was, so placed before it was paid for, a subsequent mortgagee of the

building, without notice of the condition, can treat the former chattel as a part of the mortgaged property. The court next cited, with apparent approval, cases in which the same doctrine had been applied in favor of *prior* mortgagees and then, at page 162, said: "We do not regard a distinction between prior and subsequent mortgagees as important in this case. Both classes are recognized as being within the rule." In the instant case, therefore, we find that all of the equipment and furnishings that were in the theatre at the time of the making of the lease and were later replaced by the lessee with other equipment and furnishings were subject to the mortgage, as a part of the real estate, up to the time when they were replaced, no matter how easily they could be removed.

The second question to be considered is this: If a mortgagor of real estate which includes a building thus annexes articles to the building, so as to make it better adapted to the purpose to which it is devoted, and a third party claims title to the annexed articles under a prior chattel mortgage, conditional sale agreement or the like, what is the correct rule to be applied in this State as between the mortgagee and such third party? This is the question that was decided in *McCrillis* v. *Cole, supra.* There the complainant was an equitable mortgagee of certain real estate, including a mill, under an agreement as a part of which the equitable mortgagor agreed to install certain machinery in the mill, "to be considered a part of the real estate." The mortgagor then got the machinery, under a conditional sale agreement, from the respondent, and installed it in the mill. The respondent had notice that it was likely to be installed in a mill, but had no knowledge of the agreement between the complainant and the mortgagor. As the purchase price was not paid as agreed, the respondent tried to remove the machinery in accordance with his agreement. But the court held that, as between these two parties to the suit, the machinery was a part of the real estate and subject to the mortgage, and enjoined the respondent from removing it.

In its opinion the court relied to some extent on the fact that "the complainant put out his money on the agreement" by the mortgagor to furnish and install the machinery, and said: "His money was as much advanced upon the understanding that the engine and boilers were to be a part of the realty as one who should buy the realty as it stood." It said also that there is a stronger equity in favor of a *bona fide* purchaser, without notice, than in favor of a prior mortgagee. But from its citation and discussion of cases and from the language above quoted from its opinion, we conclude that its decision would have been the same, if the complainant had not put out his money on the agreement of the mortgagor to furnish and install the machinery.

From our study of this opinion and of cases in other states bearing on the question, we believe that the proper rule, subject to a possible equitable qualification, which will be discussed later in this opinion, is as follows, *viz.*, that when a person sells personal property under a condition that it shall remain the property of the vendor until paid for, but with notice that it is to be installed in a building that is subject to a mortgage, and it is of such a character and is so installed that, if paid for, it would become subject to the mortgage, then it will become subject to the mortgage, as against the vendor, even though not paid for.

The third question to be considered is whether the same rule applies in favor of a prior mortgagee, as against the mortgagor's subsequent lessee, which itself made such an annexation of personal property to the building. On this our conclusion is that the same rule should apply, and especially in the instant case, where the lessee had not only constructive notice of the original complainant's recorded mortgage, but also, by the language of the lease, had actual notice that there were mortgages on the leased property. We cannot see that any provision of the lease, even one which, as against the lessor, would support the lessee's claim of a right to remove any of the personal property

installed by it, would adversely affect the mortgagee's rights. We have also in this case the further element that most, if not all, of the annexed articles were replacements of articles which had been previously annexed by the mortgagor and which we have found to have become subject to the mortgage.

The equitable qualification above mentioned is one that we think may be applicable in an equity case in which there is a controversy between a mortgagee of a building and a subsequent chattel mortgagee or conditional vendor of furnishings or equipment installed in the building, or between such a mortgagee of a building and a subsequent lessee thereof that has installed such furnishings or equipment therein. This qualification seems to us best set forth in *Campbell* v. *Roddy*, 44 N. J. Eq. 244, which has been followed in *Binkley* v. *Forkner*, 117 Ind. 176, and a number of other cases. In the former case a vendor of an engine, boiler and machinery, knowing that they were to be annexed to real estate, took a chattel mortgage upon them. The mortgagor of the chattels afterwards annexed them to the real estate upon which he had already given a mortgage. It is held that the lien of the chattel mortgage should be protected, so far as its protection would not diminish the security which the real estate mortgagee would have had if the annexation had not been made. The cases and arguments for and against this doctrine are well discussed in *Fuller-Warren Co.* v. *Harter*, 110 Wis. 80, 85 N. W. 698. We have not found it necessary to rule on this controversy.

The principles which we have found to be correct must now be applied to the facts of this case as to the articles in question and the nature and circumstances of their installation. The trial justice found that "these furnishings and equipment were not an original installation but were replacements of furnishings and equipment already installed and covered by the mortgage." This finding is clearly supported by sufficient evidence as to nearly all the articles. The others, as to which the matter is not so clear, will be specially referred to later.

Among the articles in dispute, which were clearly such replacements and were specially made and adapted to this theatre, according to a certain color scheme, and were installed for the purpose of making it better fitted to its use as a moving-picture theatre, are a screen for the pictures; draw curtains and curtains in front of the screen and for the standee rails, and other draperies; and also auditec wall panelling for improving the acoustics of the theatre, made to measure, and so firmly fastened to the walls by cement and nails that it could not be removed without serious damage to the walls. All these things clearly became a part of the real estate and subject to the mortgage  There are also rubber runners, which were specially prepared and laid down as replacements and which became badly worn. These should be treated in the same way. Among other replacements are also electric lamp shades. A witness testified that they were equipment and that he could not say whether they could be taken out without injury to the building. In our judgment they also should be held to have become subject to the mortgage.

Among things in dispute, which may or may not have been replacements, are felt and velour paddings on the standee rails. In our judgment, whether they were replacements or not, these were so cut and fitted firmly to the rails, and so clearly could not be removed without virtually ruining them, that it ought to be held that they became a part of the theatre and subject to the mortgage. There are also carpetings, which were probably replacements and were fastened to the cement floor by being nailed to wooden plugs properly spaced in the floor. They should be held to have become subject to the mortgage, and the evidence was that they had become badly worn. Among other things in dispute are some Ross lenses, which were installed in the moving-picture cameras to replace others which the respondent testified were worthless. There was no evidence as to what became of the old lenses. Another witness testified that the ones installed by the lessee could be

removed and used elsewhere. As the cameras were clearly a part of the permanent equipment of the theatre and therefore subject to the mortgage, and as the lenses were parts of the camera and there is no evidence as to what injury might be caused by their removal, we feel that the new lenses should be treated as fixtures also under that rule.

Then there are electric fans. Apparently they were not replacements and the evidence does not show how they were installed. The only witness who was questioned on the subject testified that he could not say whether they could be taken out without injury to the theatre. As they were apparently put in to adapt it better to use as a theatre and may well have been attached in such a way that they could not be removed without serious detriment to the building, we do not feel that the respondent should be allowed to remove them.

The only other things claimed by the respondent, which are not covered by the above discussion, are a vallen all-steel track, on which the draw curtains were operated, so that they could be drawn back and forth on each side; an electric curtain control, apparently set in place on the stage floor and used to operate the draw curtains on the track; and an automatic shutter control. There is no direct evidence as to whether these were replacements or not. As it seems to us probable that there was in the theatre, before the lease was made, some apparatus to serve the same purposes, and as the trial justice found that all the things claimed were replacements, we do not feel justified in finding that these three things were original installations. There was testimony that the track and the curtain control could be used elsewhere but no evidence as to whether they could be removed without doing serious damage to the rest of the theatre. One witness, who testified as to the curtain control, testified that he could not say whether it could be taken out without injury to the theatre. As to the automatic shutter control, there was no evidence as to whether it could be easily removed or used elsewhere. Apparently

all these three things were firmly attached to the building, to fit it better for its special purpose and to be employed in giving moving picture performances. Under all the circumstances, our conclusion is that the respondent should not be permitted to remove any of these three things.

The respondent put in testimony that a few of the former furnishings, which had been replaced by furnishings now in dispute, could be put back by him or the mortgagor, but we cannot see that this is of any importance, especially as most, if not all of them, would be entirely out of harmony with the present color scheme of the walls and furnishings.

We cannot see how the New Jersey doctrine above mentioned could properly be applied here for the benefit of the respondent, because there is no evidence that any of the things in dispute could be removed without the result of the removal being to diminish the security which the real estate mortgage would have had, if the annexation had not been made and the theatre had remained just as it was at the time when the lease was executed; and there is no proof that either of the complainants would be "unjustly enriched," if all these things in dispute are left where they now are. On this point the burden of proof was on the respondent and it was not sustained.

We cannot find that any evidence was admitted or excluded by any ruling of the trial justice which could in any way effect the result in this case.

Our final conclusion is that the appeal should be denied and dismissed and the decree appealed from affirmed, except for the unimportant correction which we stated near the beginning of this opinion should be made in the decree.

On April 13, 1936, the parties may present to this court for approval a form of decree to be entered in the superior court in accordance with this opinion.

*Raymond J. McMahon*, for complainant.
*Morris Berick*, for respondent.